UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  09-22302-CIV-UNGARO/TORRES

UNITED STATES OF AMERICA, *et. al.*,
ex rel. KEELER,

       Plaintiffs

v.

EISAI INC.,

       Defendant.

_____/

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
ENFORCE SETTLEMENT AND MOTION TO DISMISS,
AND MEMORANDUM OF LAW IN SUPPORT</u>**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION…………………………………………………………..1

II.   BACKGROUND………………………………………………………2

III.  ARGUMENT…………………………………………………………3

    A.   The Instant Action Is Not Barred By the Settlement……………………………3

        1.   The False Claims Act Prohibits Eisai From Bootstrapping An Employment Claims Settlement, Not Approved By The Government, Into A Release Of Claims Under The Act…………………………………………………………….4

        2.   Public Policy Prohibits The Dismissal Of FCA Claims Filed Before The Settlement Of A Relator's Employment Claims………………………...7

        3.   The Settlement Does Not Exclude The Government's *Qui Tam* Claims…………………………………………………………8

    B.   The Government's Decision Not To Intervene In This Action Does Not Reflect On The Merits Of The Instant Action And Is Immaterial To Ruling On The Instant Motion…………………………………………………………8

    C.   The Complaint Satisfies The Requirements of Rule 8 And Should Not Be Dismissed Pursuant To Rule 12(b)(6)…….............................................9

        1.   Count I Complies With The Pleading Requirements Under The FCA…..10

            A.  31 U.S.C. §3729(a)(1)………………………………………………10

            B.  31 U.S.C. §3729(a)(2)………………………………………………11

        2.   Count II Adequately Pleads A Retaliation Claim Under 31 U.S.C. § 3730(h)…………………………………………………………...12

        3.   Count III Adequately Alleges A Price Control Claim Under 21 C.F.R. § 312.7…………………………………………………………13

4.      Count IV Properly Alleges A Claim For Illegal Kickbacks……………………………………………………...…14

5.      The FAC's Allegations Satisfy The Pleading Requirements Under Rule 8…………………………………………………………………14

D.      The Complaint Satisfies The Requirements Of Rule 9(b)………………….15

IV.      CONCLUSION………………………………………………………………..…17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal,*
 129 S.Ct. 1937 (2009)…………………………………………………..10, 11, 12

*Bell Atl. Corp v. Twombly,*
 550 U.S. 544 (2007)………………………………………………………10

*Hill v. Morehouse Medical Assocs., Inc.,*
 2003 WL 22019936 (11th Cir. 2003)…………………………………………16

*Hopper v. Solvay Pharmaceuticals, Inc.,*
 588 F.3d 1318 (11th Cir. 2009)………………………………………………11, 13

*Robinson v. Jewish Ctr. Towers, Inc.,*
 993 F.Supp. 1475, 1477 (M.D. Fla. 1998)………………………………………12

*U.S. ex rel. El-Amin v. George Washington University,*
 2007 WL 1302597 (D.D.C., 2007)……..……………………………….3, 4, 7, 9

*United States ex rel. Atkins v. McInteer,*
 470 F.3d 1350 (11th Cir.2006)………………..……………………………9

*U.S. ex rel. Berge v. Bd. of Trustees,*
 104 F.3d 1453 (4th Cir.1997)………………………………………………9

*U.S. ex rel. Chandler v. Swords to Ploughshares,*
 1999 U.S. Dist. LEXIS 3007 (N.D. Cal. Mar. 11, 1999) ………………………..3

*U.S. ex rel. DeCarlo v. Kiewit/AFC Enters.,*
 937 F.Supp. 1039 (S.D.N.Y.1996)…………………………………………9

*U.S. ex rel. Duxbury v. Ortho Biotech Prods.,*
 579 F.3d 13, 29 (1st Cir. 2009)……………………………………………12

*U.S. ex rel. Feldman v. van Gorp,*
 2010 WL 2911606 (S.D.N.Y. 2010)………………………………………..8, 9

*U.S. ex rel. Globe Composite Solutions, LTD. v. Solar Construction, Inc.,*
 528 F.Supp.2d 1, 2 (D. Mass. 2007)…………………………………….....4, 8

*U.S. ex rel. Green v. Northrop Corp.,*
 59 F.3d 953, 959 (9th Cir. 1995)………………………………….….4, 5

*U.S. ex rel. Hall v. Teledyne Wah Chang Albany*,
104 F.3d 230 (9th Cir. 1997) ……………………………………………...3

*U.S. ex rel. Heater v. Holy Cross Hospital, Inc.*,
510 F.Supp.2d 1027 (S.D. Fla. 2007)……………………………………15

*U.S. ex rel. Killingsworth v. Northrop*,
25 F.3d 715, 721 (9th Cir. 1994)…………………………………………..5

*U.S. ex rel. Lockhart v. General Dynamics Corp.*,
529 F.Supp.2d 1335, 1341 (N.D. Fla. 2007)……………………………...16

*U.S. ex rel. Longhi v. Lithium Power Technologies*,
481 F.Supp.2d 815 (S.D. Tex. 2007)……………………………..……..3, 4, 7

*U.S. ex rel. McGough v. Covington Technologies Co.*,
967 F.2d 1391 (9th Cir. 1992)………………………………………….4 - 7

*U.S. ex rel. Milam v. University of Texas M.D. Anderson Cancer Ctr.*,
961 F.2d 46, 50 (4th Cir. 1992)………………………………………...…..5

*U.S. ex rel. Radcliffe v. Purdue Pharma L.P.*,
600 F.3d 319 (4th Cir. 2010). . …………………………………………3, 4

*U.S. ex rel. Ritchie v. Lockheed Martin Corp*,
558 F.3d 1161 (10th Cir. 2009) ……………………………………....3

*U.S.ex rel.  v. R&F Properties of Lake County, Inc.*,
433 F.3d 1349, 1359 (11th Cir. 2005)……………………………..…..5

*U.S. ex rel. Rost v. Pfizer, Inc.*,
507 F.3d 720, 732-33 (1st Cir. 2007)……………………………………11, 13

*U.S. ex rel. Whitten v. Triad Hosps., Inc.*,
2005 U.S. Dist. LEXIS 26208 (S.D. Ga. Oct. 27, 2005)…………………………..3

*Ziemba v. Cascade Int'l, Inc.*,
256 F.3d 1194, 1202 (11th Cir. 2001)……………………………………15

**Statutes**

31 U.S.C. § 3729(a)(1). …………………………………………………..10

31 U.S.C. § 3729(a)(2). . …………………………………………………..10, 11

31 U.S.C. § 3730(b)………………………………………………………..4, 6

31 U.S.C. § 3730(h)………………………………………………………………12

42 U.S.C. § 1320(a-7)………………………………………………………………14

42 U.S.C. § 1001………………………………………………………………………14

**Rules and Regulations**

Federal Rules of Civil Procedure

     Rule 8…………………………………………………………………..9, 14

     Rule 9(b)……………………………………………………………14, 16

     Rule 12(b)(6) ………………………………………………………………9

21 C.F.R. § 312.7………………………………………………………………………13

## I.       INTRODUCTION

Relator, Michael Keeler, was terminated by Defendant Eisai, Inc. from his position as a pharmaceutical sales representative after he had repeatedly objected to Eisai's systematic and illegal off-label marketing of Ontak, a cancer drug.   Keeler had personal knowledge that Eisai's comprehensive off-label marketing scheme was intended to lead to false claims being made to the government.   Moreover, Keeler knew that Eisai's off-label marketing did in fact lead to Medicare and Medicaid participating physicians, hospitals, and pharmacies submitting false claims to Medicare and Medicaid.  These false claims, were the direct, proximate, and intended result of Eisai's off-label marketing scheme.   These false claims are the basis of the instant False Claims Act ("FCA") case.

Eisai's motion to dismiss confronts Keeler's allegations of its systematic fraud, with a series of red herrings, which attempt to mischaracterize the nature of this FCA action.   The supposed medical efficacy of off-label uses of Ontak are <u>not</u> the subject of this lawsuit. Likewise, the propriety of a physician's off-label prescription of medication and Eisai's First Amendment rights are <u>not</u> at issue.

The false claims made to the government as a direct and proximate result of Eisai's off-label marketing scheme are the subject of the instant FCA action.   Keeler, an Eisai insider, has adequately alleged the particularities of this off-label scheme and the resulting false claims.

The Court should deny the motion to dismiss for three reasons: ***First***, the settlement of Keeler's employment claims with Eisai was reached after Keeler had filed the instant qui tam action.   The FCA claims belong to the government, not Keeler.   Accordingly, after the filing of the instant action, Keeler lacked any right to release the government's FCA claims and he did not purport to release these claims.   Moreover, the government did not consent to the release of the subject FCA claims.

**Second**, the First Amended Complaint ("FAC")[1] satisfies the pleading requirements under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure because it alleges facts which describe Eisai's comprehensive off-label marketing scheme and how Eisai intended this scheme to result in false claims being made to the government. Moreover, the FAC alleges instances in which false claims were made to the government as a direct and proximate result of Eisai's off-label marketing scheme.

**Third**, the FAC alleges sufficient facts of Eisai's fraud to satisfy the pleading requirements of Rule 9(b). Keeler provides detailed factual allegations which establish Eisai's multi-pronged fraud, including the resulting false claims that were made to Medicare and Medicaid. Therefore, Eisai's motion to dismiss should be denied.

## II.    BACKGROUND

From 2006 through April 2009, Keeler was employed by Eisai as a pharmaceutical sales representative. First Amended Complaint ("FAC")[D.E. 19] at ¶ 11.  During his employment Keeler acquired firsthand knowledge of illegal means and methods being utilized by Eisai in its sale of certain drugs. *Id*. at ¶ 12.  Upon discovering these incriminating practices, Keeler notified his superiors in the hopes that Eisai would rectify its illegal conduct, but Keeler was instead terminated. *Id*. at ¶¶ 121 – 123.

Following his wrongful termination, on or about August 4, 2009, Keeler filed the instant *qui tam* action—and thereafter, filed his First Amended Complaint on July 8, 2010—against Eisai for alleged violations under the FCA.

After filing the instant qui tam action, Eisai and Keeler executed a Settlement Agreement and General Release (the "Settlement") on or about December 10, 2010, wherein Eisai paid certain funds to Keeler and, in exchange, Keeler released Eisai from liability as to certain past,

---

[1] The FAC is the operative complaint. [D.E. 19]  The FAC was not served on Eisai.  Keeler cites to the FAC since Eisai contends that the issues in the motion to dismiss similarly relate to it.

present, and/or future claims. (See Settlement Agreement and General Release, D.E. 46-1.)  The Settlement does not reflect that the United States Federal Government (the "Government") gave its written consent. *Id.*

On or about February 24, 2011, the Government filed a Notice of Election to Decline Intervention and the case was unsealed. [D.E. 23]  On May 2, 2011, Eisai filed its Motion to Enforce Settlement and Motion to Dismiss, and Memorandum of Law in Support. [D.E. 46].

As stated above, Eisai raises the following three principal arguments for dismissal: (1) that the False Claims Act claims in the instant action were released by Keeler as part of the Settlement; (2) that the FAC's allegations do not meet the threshold requirements of Rule 8 and, therefore, it should be dismissed pursuant to Rule 12(b)(6); and (3) that the FAC's allegations were not pled with the requisite fraud particularity requirement set forth in Rule 9(b).  The instant False Claims Act case must not be dismissed on these bases.

## III.    ARGUMENT

### A.  The Instant Action Is Not Barred By The Settlement.

Eisai erroneously contends that Keeler's execution of the Settlement bars him from bringing the instant action.  Eisai cites several cases[4] to support its argument that the release entered into between Keeler and Eisai <u>after</u> filing the instant *qui tam* action should bar the instant action.  These cited cases are inapposite to the instant action because the releases in those cases were executed before the respective qui tam actions were filed.  As more fully discussed below, the courts' holdings in *United States ex rel. El-Amin v. George Washington University*, F.Supp.2d 2007 WL 1302597 (D.D.C., 2007) and *United States ex rel. Longhi v. Lithium Power*

---

[4] *U.S. ex rel. Chandler v. Swords to Ploughshares*, 1999 U.S. Dist. LEXIS 3007 (N.D. Cal. Mar. 11, 1999), *U.S. ex rel. Hall v. Teledyne Wah Chang Albany*, 104 F.3d 230 (9th Cir. 1997), *U.S. ex rel. Radcliffe v. Purdue Pharma L.P.*, 600 F.3d 319 (4th Cir. 2010), *U.S. ex rel. Ritchie v. Lockheed Martin Corp*, 558 F.3d 1161 (10th Cir. 2009), and *U.S. ex rel. Whitten v. Triad Hosps., Inc.*, 2005 U.S. Dist. LEXIS 26208 (S.D. Ga. Oct. 27, 2005).

*Tech. Inc.*, 575 F.3d 458 (5th Cir. 2009) affirm that general releases entered into after filing a *qui tam* suit, as is the case here, are unenforceable to bar *qui tam* actions.

      **1.** **The False Claims Act Prohibits Eisai From Bootstrapping An Employment Claims Settlement, Not Approved By The Government, Into A Release Of Claims Under The Act.**

31 U.S.C. § 3730(b)(1) states:

> A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting. [emphasis added]

In other words, the consent of the Government is a necessary condition precedent to enforcement of an otherwise valid release where such a release is executed subsequent to filing a *qui tam* action. *U.S. v. Purdue Pharma L.P.*, 600 F.3d 319, 328 (4th Cir. 2010); *United States ex rel. Globe Composite Solutions, LTD. v. Solar Construction, Inc.*, 528 F.Supp.2d 1, 2 (D. Mass. 2007) (The statute is clear on its face; the court and the Government must give their written consent, or the action may not be dismissed); *see also United States ex rel. El-Amin v. George Washington University*, F.Supp.2d 2007 WL 1302597 (D.D.C., 2007) (Release, which became effective after *qui tam* filing, is unenforceable to bar a *Qui Tam* action); *United States ex rel. Longhi v. Lithium Power Technologies*, 481 F.Supp.2d 815 (S.D. Tex. 2007) (Post-filing general release is unenforceable to bar a *qui tam* action).

Moreover, "in the absence of a later decision by the government to intervene…this provision [Section 3730(b)(1)] applies only during the initial sixty-day period, or however long that period is extended, during which the government may review the case and elect to proceed with the action…" [emphasis added] *United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953, 959 (9th Cir. 1995) *citing United States ex rel. McGough v. Covington Technologies Co.*, 967

F.2d 1391, 1397 (9th Cir. 1992) and *United States ex rel. Killingsworth v. Northrop*, 25 F.3d 715, 721 (9th Cir. 1994).

In its Motion, Eisai alludes to the notion that the Government's decision to decline intervention (after conducting a lengthily sixteen-month long investigation) may be interpreted as the Government giving its consent to proceed as if it was no longer a party to the action. This opinion, however, is erroneous for two (2) reasons.

First, "the private right of recovery created by the *qui tam* provisions…exists not to compensate the *qui tam* relator, but the United States. The relator's right to recovery exists solely as a mechanism for deterring fraud and returning funds to the federal treasury." *United States ex rel. Green* at 968; *see also U.S. v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349, 1359 (11th Cir. 2005) (The United States is the real party in interest in a qui tam action under the FCA even if it is not controlling the litigation.); *United States ex rel. Killingsworth* at 720 ("It is clear, however, that in a *qui tam* action, the government is the real party in interest"); *United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Ctr.*, 961 F.2d 46, 50 (4th Cir. 1992) ("United States is the real party in interest in any False Claims Act suit, even where it permits a *qui tam* relator to pursue the action on its behalf). Therefore, and unless it expressly states otherwise, the Government is *always* the true party-in-interest regardless of whether it or the relator is spearheading the litigation proceedings. *United States ex rel. McGough* at 1396 *referencing* 31 U.S.C. § 3730(b)(4).

Second, the Government's extended investigation, and subsequent decision to decline to intervene cannot be inferred to mean that it has chosen to waive its interest in the outcome of the action, regardless of how long or short it takes for it to conduct its investigation. In *United States ex rel. Killingsworth*, for example, the court found that the Government *still* had the right to object to a settlement proposal executed between the parties almost two (2) years after it had

concluded an eighteen-month long investigation of which it informed the court, on more than one occasion, that it did not want to intervene.  *See also United States ex rel. McGough* at 1397 ("To hold that the government's initial decision not to take over the *qui tam* action is the equivalent of its consent to a voluntary dismissal…would require us to ignore the plain language of section 3730(b)(1)").  Accordingly, the Government's initial decision to decline to intervene in the instant action is <u>not</u> dispositive of its written consent to the Settlement.

Here, it is clear and uncontested that the Settlement was not only executed <u>after</u> Keeler filed the instant *qui tam* action, but also <u>during</u> the time period in which the Government was conducting its review of the case in determining whether to intervene.  Moreover, on or about February 24, 2011, the Government filed a Notice of Election to Decline Intervention; however, the Notice also set forth that pursuant to 31 U.S.C. § 3730(b)(1):

> the 'action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.'  Therefore, the United States requests that, <u>should either the relator or the defendant propose that this action be dismissed, settled, or otherwise discontinued, this Court solicit the written consent of the United States before ruling or granting its approval</u>.  [emphasis added]

The Notice does not reflect that the Government had knowledge of the Settlement.  Moreover, the Notice does not reflect that the Government gave its informed-written consent of the Settlement.

Accordingly, this Court must not enforce the Settlement with respect to the instant *qui tam* action because the Settlement was executed: (1) <u>after</u> the subject suit was filed, (2) <u>during</u> the time period in which the Government was conducting its review of the case in determining whether to intervene, and (3) <u>without the informed written consent</u> of the Government.

**2. Public Policy Prohibits The Dismissal Of FCA Claims Filed Before The Settlement Of A Relator's Employment Claims.**

As part of its argument in favor of enforcement of the Settlement, Eisai purports the notion that public policy strongly favors dismissing Keeler's action; however, Eisai's basis for this reasoning is flawed. Eisai cites to cases in which the courts' public policy analyses rest upon the fact that the settlements in question were executed prior to the filing of the *qui tam* actions rather than subsequent to the filing, as is the case at hand. In other words, Eisai's public policy argument might very well hold water had Eisai and Keeler executed the Settlement <u>prior</u> to Keeler's filing this suit. Thus, because the subject release was executed subsequent to Keeler filing this action, the very cases Eisai relies on contradict its argument and further, reinforce the fact that public policy requires this Court to bar enforcement of the Settlement. "Section 3730(b)(1) manifests Congress' express intent to prohibit a relator's unilateral settlement of FCA claims, absent the government's consent, once a suit has been filed" for allowing what otherwise would undermine public policy interests and the purpose of the Statute. *U.S. v. Purdue* at 328.

As discussed *infra*, in *United States ex rel. El Amin* and *United States ex rel. Longhi*, the courts concluded that enforcing a general release which was executed subsequent to filing a *qui tam* action controverts public policy interests' reasoning that: (1) enforcement of a release akin to a voluntary dismissal without the consent of the government is invalid under the plain language of the FCA Statute and (2) enforcing a release entered into during the investigatory period (or before the government decides to intervene) would frustrate the financial incentives designed to encourage relator participation as well as unduly interfere with the government's exclusive and unilateral right during that time to evaluate, whether or not to join the *qui tam* action. *See generally United States ex rel. Amin* at 6-8; *United States ex rel. Longhi* at 818-21; *see also United States ex rel. McGough* at 1396 (It is one thing for the government to rely on the quality of the *qui tam* plaintiffs' representation in pursuing a case to judgment; it is quite another to hold

the government bound by a deal made by the *qui tam* plaintiffs without the government's knowledge or consent as it cannot be said that the *qui tam* plaintiffs' representation of the government's interests are adequate); *United States ex rel. Globe Composite Solutions* at 3-4 (A settlement between the private parties in a *qui tam* action should not prevent the Government from ever pursuing a case against an entity accused of defrauding the Government).

Accordingly, public policy requires this Court to bar enforcement of the Settlement because otherwise the Government will be precluded from seeking redress for false claims it paid as a result of Eisai's illegal conduct.

### 3.   The Settlement Does Not Exclude The Government's *Qui Tam* Claims.

Considering the strength of the previous argument, it is not necessary to consider the actual content of the Settlement to determine enforceability.  However, assuming *in arguendo* that this Court finds otherwise, the express provisions of the Settlement do not purport to release or prohibit the government's False Claims Act claims. See Settlement, ¶ 3(i).

### B.  The Government's Decision Not To Intervene In This Action Does Not Reflect On The Merits Of The Instant Action And Is Immaterial To Ruling On The Instant Motion.

A decision to decline intervention should not be construed as a statement about the merits of the case.  When a suit is filed, the government is then pressed to investigate the asserted claims and there are a host of reasons why the government may not intervene initially--which may have nothing to do with the merits.  The Government retains the right to intervene at a later date upon a showing of good cause. 31 U.S.C. § 3730(c)(3).  As the court in *U.S. ex rel. Feldman v. van Gorp*, 2010 WL 2911606 (S.D.N.Y. 2010), recently stated:"Because the government 'may have a host of reasons for not pursuing a claim, [courts] do not assume that in each instance in which the government declines intervention in an FCA case, it does so because it considers the evidence of wrongdoing insufficient or the qui tam relator's allegations [of] fraud to be without

merit." *citing United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 n. 17 (11th Cir.2006); *see also United States ex rel. DeCarlo v. Kiewit/AFC Enters*., 937 F.Supp. 1039, 1047 (S.D.N.Y.1996) ("[N]on-intervention does not necessarily signal governmental disinterest in an action."). "[T]he plain language of the Act clearly anticipates that even after the Attorney General has 'diligently' investigated a violation [of the FCA], the Government will not necessarily pursue all meritorious claims." *U.S. ex rel. Berge v. Bd. of Trustees*, 104 F.3d 1453, 1458 (4th Cir.1997), *cert. denied*, 522 U.S. 916, 118 S.Ct. 301, 139 L.Ed.2d 232 (1997). "[O]therwise there is little purpose to the qui tam provision permitting private attorneys general." *Berge*, 104 F.3d at 1458; *see also U.S. ex rel. El-Amin v. George Washington Univ*., 533 F.Supp.2d 12, 21 (D.D.C.2008) (assuming non-intervention is relevant to merits of relator's claims "would seem antithetical to the purpose of the qui tam provision-to encourage private parties to litigate on behalf of the government"). Moreover, the DOJ's Statement of Interest explicitly provided that "the government's decision not to intervene in this case is not probative of any matter concerning the merits of relator's claims." (Statement of Interest of the *U.S.* at 2, *U.S. ex rel. Feldman v. van Gorp*, No. 03 Civ. 8135 (S.D.N.Y. Mar. 16, 2009) ECF No. 95.) Accordingly, the government's decision not to intervene in this action is not relevant to the disposition of the issues sub-judice.

### C. The Amended Complaint Satisfies The Requirements of Rule 8 And Should Not Be Dismissed Pursuant To Rule 12(b)(6).

Rule 8 provides in pertinent part: "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction…(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought". Fed.R.Civ.P.

Keeler's allegations adequately allege facts which establish that Eisai intended to cause physicians, hospitals, and pharmacies to submit false claims. requirements set forth in Rule 8.

9

Nonetheless, the requirement that the pleading contains a short and plain statement of claims showing that Keeler is entitled to relief *does not* require detailed factual allegations, but demands more than plain accusations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) *citing Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007). Additionally, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face; and a claim has "facial plausibility" when a plaintiff pleads factual content that allows a court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *Id.*

The FAC alleges the time, manner, methods, and practices employed by Eisai to engage in the off-label marketing of Ontak—i.e. providing a detailed background on the very limited uses of the subject drug; the circumstances surrounding Eisai's acquisition of the subject drug; and the various types of schemes exercised by Eisai to expand the sale of the drug outside the boundaries of its legal uses (as expressly warned by the Food and Drug Administration) so as to increase the drug's profitability—in causing physicians and states to make false claims.

Taken together, and when read as a whole, these allegations comprise sufficient factual matter that are "facially plausible" because the facts asserted provide more than enough background and information to allow this Court to draw reasonable inferences that Eisai is liable for its violations under the FCA Statute.

### 1. Count I Complies With The Pleading Requirements Under The FCA.

Keeler has adequately pled claims under both 31 U.S.C. §§ 3729(a)(1) and (a)(2).

### A. 31 U.S.C. §3729(a)(1).

31 U.S.C. § 3729(a)(1) contains a "presentment clause", which imposes liability on a person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or

fraudulent claim for payment or approval."  Keeler has adequately alleged facts concerning the presentment of false claims to the U.S. government. See FAC at ¶¶ 109 – 112 and 118.

Keeler has alleged that Eisai's off-label marketing scheme was intended to cause physicians, hospitals, and pharmacies to present false claims (¶ 109), that Eisai knew that off-label prescriptions for Ontak were ineligible for reimbursement (¶ 110), that doctors, hospitals and pharmacies submitted claims for reimbursement of off-label prescriptions, and that these false claims were paid by the government (¶¶ 114 and 115).  In addition, Keeler alleges that Dr. Chesney at the University of Louisville, used Ontak off-label to treat melanoma. FAC, ¶ 70; *See Hopper v. Solvay*, 588 F.3d 1318, *1326 (11th Cir. 2009) *citing U.S. ex rel. Rost v. Pfizer, Inc*., 507 F.3d 720, 732-33 (1st Cir. 2007)(suggesting that submitting off-label prescriptions for federal reimbursement could lead to the filing of false claims).  Therefore, the FAC contains sufficient factual allegations with respect to § 3729(a)(1), which state a claim for relief that is plausible on its face because it allows a court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal* at 1949.

### B.  31 U.S.C. § 3729(a)(2).

Section 3729(a)(2) does not contain a presentment clause. *Hopper v. Solvay*, at 1327. The 11th Circuit has held that a claim under this section must allege the following two facts: "(1) the defendant made a false record or statement for the purpose of getting a false claim paid or approved by the government; and (2) the defendant's false record or statement caused the government to actually pay a false claim". *Id*.  Moreover, under subsection (a)(2) the identity of the person or entity who submitted or caused the submission of a claim is not an element. *Id*., at 1329.  Moreover, the particularity requirements of Rule 9(b) should not be applied to Keeler's § 3729(a)(2) claim and a more relaxed standard should be applied. See Id., at 1329 ([W]e may consider whether the particularity requirements of Rule 9(b), as to the details of the alleged false

claims at issue, are more relaxed for claims under 31 U.S.C. §3729(a)(2) than for claims under §

3729(a)(1)) *citing U.S. ex rel. Duxbury v. Ortho Biotech Prods*., 579 F.3d 13, 29 (1ˢᵗ Cir. 2009).

The FAC satisfies both of these requirements.  Keeler alleged that Eisai caused:

> "the states to submit false claims to the United States Government in Form CMS-64. . .which falsely certified that all drugs for which federal reimbursement was sought, including Ontak, were paid for in compliance with federal law.  States submitted false claims to the Government Health Care Programs because when Ontak was prescribed off-label it was not prescribed for a medically accepted indication,. yet states sought reimbursement from the United States Government for all Ontak expenditures."

> FAC, ¶ 116.

Keeler alleged that Eisai's off-label marketing scheme, including causing the states to falsely

certify Form CMS-64, was done for the purpose of obtaining payment or approval of false

claims. *See* FAC, ¶¶ 109 – 112.  Keeler satisfied the second requirement by alleging that the

United States paid and continue to pay false claims  as a result of the false records, statements,

and claims that have been made. *See* FAC, ¶¶ 117 and 118.

### 2.    Count II Adequately Pleads A Retaliation Claim Under 31 U.S.C. § 3730(h).

31 U.S.C. § 3730(h) precludes discharge, demotion, or retaliation against employees who

investigate, provide testimony or assistance in any action filed or to be filed under the FCA.  To

state a claim for relief under this statute, a plaintiff must show that (1) he was engaged in

conduct protected under the FCA; (2) the defendant was aware of the plaintiff's actions; and (3)

plaintiff was terminated in retaliation for his conduct.  *Robinson v. Jewish Ctr. Towers, Inc.*, 993

F.Supp. 1475, 1477 (M.D. Fla. 1998).

Keeler has stated a claim for relief that is plausible on its face because sufficient facts

have been pled which allow the court to draw reasonable inferences that the defendant is liable

for the misconduct alleged.  *Ashcroft v. Iqbal* at 1949.  Keeler alleges that he informed  Eisai

supervisor David Trexler of his objections to the illegal off-label selling and marketing of Ontak

to physicians and hospitals. FAC, ¶ 48.  Keeler's stated objections was sufficient to place Eisai

on notice that Eisai was engaged in conduct that would result in false claims being made to the

government and was therefore illegal. *See Hopper v. Solvay*, at 1326 citing *U.S. ex rel. Rost v.*

*Pfizer, Inc.*, 507 F.3d 720, 732-33 (1st Cir. 2007)(suggesting that submitting off-label

prescriptions for federal reimbursement could lead to the filing of false claims).  He objected to

Defendant's off-label marketing practices on multiple occasions, including an instance in

Autumn 2008. FAC, ¶¶ 120 and 121.  Finally, on April 24, 2009, an Eisai manager stated to

Keeler that a reason for his termination was that he had communicated his objection to off-label

marketing of Ontak to another employee.   Accordingly, the FAC meets the threshold

requirements of the anti-retaliation provision under the FCA.

> **3.**     **Count III Adequately Alleges A Price Control Claim Under 21 C.F.R. §**
> **312.7.**

Keeler alleges that Eisai has launched avoided federal price controls on investigational

new drugs through a nationwide program of experimentation involving the off-label prescription

of Ontak which results in false claims being made. *See* FAC, ¶¶ 129,. 130, and 135.  The Code of

Federal Regulations on promotions of investigational drugs reads in pertinent part:

> A sponsor or investigator, or any person acting on behalf of a
> sponsor or investigator, shall not represent in a promotional
> context that an investigational new drug is safe or effective for the
> purposes for which it is under investigation or otherwise promote
> the drug.

21 C.F.R. § 312.7.

For purposes of this claim, Keeler alleges that Ontak is "investigational" pursuant to 21

C.F.R. § 312.7 when it is considered in an off-label context and has been prescribed to patients

as part of a nationwide program of experimentation sponsored by Eisai, akin to a clinical trial.

See ¶¶ 130 - 134.  The plain language of § 312.7 does not preclude Ontak from being considered

"investigational" in an off-label context, simply because this has been approved by the FDA for

another use.  Keeler has adequately pled facts which establish a federal price control claim under 21 C.F.R. § 312.7.

### 4.     Count IV Properly Alleges A Claim For Illegal Kickbacks.

Federal laws and regulations governing the Government Health Care Programs prohibit kickbacks or inducements paid to physicians and medical care providers.  Kickbacks are "payments, gratuities and other benefits paid to physicians and others as an inducement to cause those physicians and other healthcare providers to purchase said drugs."  42 U.S.C. § 1320(a-7); 42 U.S.C. § 1001.

While Eisai is correct in stating that providing a discount required by law is not an illegal kickback; its argument has blatantly ignored the substance of the allegations.   As more fully set forth in the Complaint, Eisai essentially trained its sales representatives (including Keeler) to illustrate to physicians and medical care providers (via the use of flash cards) how they could turn a profit for themselves by prescribing Ontak to its patients.  They explained to them how they could potentially double their investment in the drug by purchasing the drug from Eisai at about $600-$650 per single dose and then submit a reimbursement claim to the government which would payout anywhere from $1,300-$1,400 per single dose, thus allowing the physicians and medical providers to pocket the difference in the reimbursement funds.

Accordingly, Eisai has engaged in illegal kickbacks because its conduct intended to induce physicians and medical care providers into buying Ontak under the condition that they could file a reimbursement claim and be compensated, as well as earn up to double their initial investment, all at the expense of the United States Government.

### 5.     The FAC's Allegations Satisfy The Pleading Requirements Under Rule 8.

Tailored as a type of "catch-all" argument, Eisai attempts to argue that the "general allegations"—e.g. off-label marketing, marketing the spread, bundling—fail to establish a right

to relief because they are not included as part of Keeler's counts.  To the contrary, these allegations are necessary to maintain the validity of the Complaint and the claims it states. While each of these practices, in and of themselves, are not per se illegal, when read together and considered in the aggregate, they illustrate a pattern of fraudulent activity Eisai engaged in to achieve its goal of expanding the Ontak drug's marketability and profitability beyond that of which it was meant to be used.  In other words, these allegations build the foundation for setting the stage in proving how Eisai went about its illegal activities in marketing and selling the subject drug.  As such, these allegations are not only necessary, but imperative to preserving the integrity of the Complaint and its claims.

Accordingly, for the foregoing reasons, Keeler's Amended Complaint satisfies the requirements of Rule 8 and, therefore, should not be dismissed pursuant to Rule 12(b)(6).

**D.    The FAC Satisfies The Requirements of Rule 9(b).**

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed.R.Civ.P. 9(b).  Rule 9(b) is satisfied where a complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*United States ex rel. Heater v. Holy Cross Hospital, Inc.*, 510 F.Supp.2d 1027 (S.D. Fla. 2007) *citing Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Here the Amended Complaint gives ample indication of the reliability of Keeler's claims. According to the Amended Complaint, Keeler alleged Eisai acquired the rights to the sale of a drug (Ontak) of which it knew its approval by the FDA was only for a very limited purpose.

Additionally, and based upon the warning issued by the FDA of the drug's intended use, Keeler alleged that Eisai—throughout certain specified times of his employment (stated in the Complaint) and by and through certain top employees (also named in the Complaint)—ignored the warning and proceeded to encourage its sales representatives (including Keeler) to promote the drug for treatments outside the boundaries of its legal uses (or other than what it was FDA-approved for) and cause physicians and states to submit numerous ineligible prescriptions to Government Healthcare Programs.  As such, Keeler's Amended Complaint alleges with adequate particularity both the substance of the fraud and the requisite reliable basis for Keeler's knowledge of it. *U.S. ex rel. Lockhart v. General Dynamics Corp.*, 529 F.Supp.2d 1335, 1341 (N.D. Fla. 2007).

Moreover, "Rule 9(b)'s heightened pleading standard may be applied less stringently…when 'specific factual information [about the fraud] is peculiarly within the defendant's knowledge or control.'" *Hill v. Morehouse Medical Assocs., Inc.*, 2003 WL 22019936 (11th Cir. 2003).

Given the nature of fraudulent claims involved in this particular action—namely, medical prescriptions and reimbursement claims—much of the documentation and information needed to further prove Keeler's claims are not within his control due primarily to Health Insurance Portability and Accountability Act ("HIPAA") concerns.  As such, this Court should take note that discovery is ongoing and further information which may be necessary to plead any additional-required facts pursuant to Rule 9(b) will be forthcoming upon Keeler's acquisition of said documentation and information.

IV.     **CONCLUSION**

For the reasons set forth herein, Eisai's Motion to Enforce Settlement and Motion to Dismiss, and Memorandum of Law in Support must be denied.

Dated:  May 23, 2011                    Respectfully submitted,

                                        /s/ Gary M. Farmer, Jr.
                                        Gary M. Farmer, Jr.  Fla. Bar No.  914444
                                        Steven R. Jaffe Fla. Bar No.  390770
                                        Seth Lehrman Fla. Bar No.  132896
                                        **FARMER, JAFFE, WEISSING,**
                                        **EDWARDS, FISTOS & LEHRMAN, P.L.**
                                        425 North Andrews Avenue, Suite 2
                                        Fort Lauderdale, FL 33301
                                        Ph:  (954) 524-2820
                                        Fax:  (954) 524-2822
                                        Email:  gary@pathtojustice.com

                                        James P. Gitkin Fla. Bar No.  570001
                                        **SALPETER GITKIN, LLP**
                                        Museum Plaza – Suite 503
                                        200 South Andrews Avenue
                                        Fort Lauderdale, FL 33301
                                        Ph:  (954) 467-8622
                                        Fax:  (954) 467-8623
                                        Email:  jim@salpetergitkin.com

                                        *Attorneys for Michael Keeler, Relator*

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on May 23, 2011, on all counsel of record on the Service List below in the manner specified.

/s/ Gary M. Farmer
Gary M. Farmer

## SERVICE LIST

| | |
|---|---|
| Mark Alan Levine<br>**U.S. ATTORNEY'S OFFICE**<br>**SOUTHERN DISTRICT OF**<br>**FLORIDA**<br>99 N.E. 4th Street, Suite 300<br>Miami, FL 33132<br>Ph: (305) 961-9303<br>Fax: (305) 530-7139<br>Email: mark.levine@usdoj.gov | Theodore L. Radway<br>**U.S. ATTORNEY'S OFFICE**<br>**SOUTHERN DISTRICT OF**<br>**FLORIDA**<br>99 N.E. 4th Street, Suite 300<br>Miami, FL 33132<br>Ph: (305) 961-9337<br>Fax: (305) 530-7139<br>Email: ted.radway@usdoj.gov |
| *Attorneys for United States of America* | *Attorneys for United States of America* |

## VIA FIRST CLASS U.S. MAIL

| | |
|---|---|
| Joyce R. Branda<br>Patricia R. Davis<br>Arthur S. Di Dio<br>**UNITED STATES DEPARTMENT**<br>**OF JUSTICE COMMERCIAL**<br>**LITIGATION BRANCH**<br>601 D Street NW<br>Washington, D.C. 20004<br>Ph: (202) 305-2335<br>Email: civil.fraud@usdoj.gov | Candice D. Hooper<br>**ASSISTANT ATTORNEY GENERAL**<br>**CIVIL INVESTIGATIONS UNIT**<br>**MEDICAID FRAUD CONTROL UNIT**<br>**OFFICE OF THE ATTORNEY**<br>**GENERAL**<br>900 East Main Street<br>Richmond, VA<br>Ph: (804) 371-6017<br>Email: chooper@oag.state.va.us |
| *Attorneys for United States of America* | *Attorneys for Commonwealth of Virginia* |