IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-22302-CIV-UNGARO/BANDSTRA

UNITED STATES OF AMERICA, et al.
ex rel. KEELER

                Plaintiffs,

v.

EISAI INC.,

                Defendant.
_____ /

**DEFENDANT EISAI INC.'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AND MOTION TO
DISMISS, AND MEMORANDUM OF LAW IN SUPPORT**

| | |
|---|---|
| J. Sedwick Sollers III | Patricia E. Lowry |
| Mark A. Jensen |   Florida Bar No. 332569 |
| Ashley C. Parrish | Amy Bloom |
| Jamie A. Lang |   Florida Bar No. 0506893 |
| KING & SPALDING LLP | SQUIRE, SANDERS & DEMPSEY (US) LLP |
| 1700 Pennsylvania Ave., N.W. | 1900 Phillips Point West |
| Washington, D.C.  20006 | 777 South Flagler Drive |
| Telephone:  (202) 737-0500 | West Palm Beach, FL  33401-6198 |
| Facsimile:  (202) 626-3737 | Telephone:  (561) 650-7200 |
| Email: wsollers@kslaw.com | Facsimile:  (561) 655-1509 |
| Email: mjensen@kslaw.com | Email: patricia.lowry@ssd.com |
| Email: jlang@kslaw.com | Email: amy.bloom@ssd.com |
| Email: aparrish@kslaw.com | |

Dated:  June 3, 2011

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION .............................................................................................................................. 1

ARGUMENT ..................................................................................................................................... 1

I.    All Of Keeler's Claims Have Been Released. ................................................................... 1

II.    The Complaint Does Not Satisfy The Requirements Of Rule 8 And Rule 12(b)(6). ....................................................................................................................... 5

    A.    Keeler's Personal Retaliation Claim Does Not State A Claim For Relief. ................................................................................................................ 6

    B.    Keeler's FCA Claims Do Not State A Claim For Relief. ....................................... 6

    C.    The Complaint's General Allegations Fail To Establish A Right To Relief. ................................................................................................................ 9

III.    The Complaint Does Not Satisfy The Requirements Of Rule 9(b). ................................... 9

CONCLUSION ................................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) .................................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2006) ........................................................................................................ 6

*Hopper v. Solvay Pharm., Inc.*,
    588 F.3d 1318 (11th Cir. 2009) .............................................................................. 6, 9, 10

*Minotti v. Lensink*,
    895 F.2d 100 (2d Cir. 1990) ............................................................................................ 3

*Town of Newton v. Rumery*,
    480 U.S. 386 (1987) ........................................................................................................ 3

*U.S. ex rel. Clausen v. Lab. Corp. of Am.*,
    290 F.3d 1301 (11th Cir. 2002) ..................................................................................... 10

*U.S. ex rel. El-Amin v. George Was. Univ.*,
    2007 U.S. Dist. LEXIS 32166 (D.D.C. May 2, 2007) .................................................... 4

*U.S. ex rel. Hall v. Teledyne Wah Chang Albany*,
    104 F.3d 230 (9th Cir. 1997) .......................................................................................... 4

*U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*,
    510 F. Supp. 2d 1027 (S.D. Fla. 2007) ........................................................................... 9

*U.S. ex rel. Hill v. Morehouse Med. Assoc., Inc.*,
    2003 WL 22019936 (11th Cir. Aug. 15, 2003) ............................................................. 10

*U.S. ex rel. Killingsworth v. Northrop Corp.*,
    25 F.3d 715 (9th Cir. 1994) ........................................................................................ 2, 3

*U.S. ex rel. Lockhart v. Gen'l Dynamics Corp.*,
    529 F. Supp. 2d 1335 (N.D. Fla. 2007) ........................................................................ 10

*U.S. ex rel. Longhi v. Lithium Power Tech. Inc.*,
    481 F. Supp. 2d 815 (S.D. Tex. 2007) ............................................................................ 4

*U.S. ex rel. Radcliffe v. Purdue Pharma L.P.*,
    600 F.3d 319 (4th Cir. 2010) .......................................................................................... 4

*U.S. ex rel. Whitten v. Triad Hosps., Inc.*,
    2005 U.S. Dist. LEXIS 26208 (S.D. Ga. Oct. 27, 2005),
    *rev'd on other grounds*,
    210 Fed. Appx. 878 (11th Cir. 2006) ........................................................................................ 4

**Statutes**

31 U.S.C. § 3729(a) ................................................................................................................. 6, 7

31 U.S.C. § 3730(b) ................................................................................................................. 2, 3

31 U.S.C. § 3730(c) ..................................................................................................................... 2

**Regulations**

21 C.F.R. § 312.3(b) .................................................................................................................... 7

21 C.F.R. § 312.7 ......................................................................................................................... 7

59 Fed. Reg. 25,110 (May 13, 2004) ........................................................................................... 8

## INTRODUCTION

Relator Michael Keeler's opposition provides no meaningful response to the key points set forth in Eisai's motion to dismiss. It is undisputed that, months after he filed this complaint and while it remained under seal, Keeler voluntarily executed a settlement agreement with Eisai that fully and completely released "any and all claims … of any kind whatsoever" against Eisai. That broad Release covers all the claims pleaded in Keeler's complaint, both his personal retaliation claims and the *qui tam* claims that he seeks to litigate on the government's behalf. Because the government had 16 months to investigate the complaint's allegations before Keeler executed the Release and, after its investigation, ultimately declined to intervene in this action, there is no public policy rationale for allowing Keeler to circumvent his binding and voluntarily assumed contractual obligations. Moreover, Keeler's allegations here do not satisfy the basic requirements of Rule 8 and Rule 9. Keeler's complaint does not include sufficient factual content, or sufficient particularity, to plead a plausible claim of fraud. This Court should dismiss the complaint in its entirety.

## ARGUMENT

### I.   All Of Keeler's Claims Have Been Released.

Keeler offers no response to Eisai's arguments that his *personal* retaliation claim and efforts to obtain a personal recovery are barred by the Release. *See* Opp. 3-8. As to his remaining *qui tam* claims, Keeler asserts that "the express provisions of the Settlement do not purport to release or prohibit the government's False Claims Act claims." Opp. 8. But that assertion cannot be squared with the very provision he cites, which "fully and completely settles" "any and all claims," "*including but not limited to*" various personal statutory claims. Release ¶ 3 (emphasis added). Keeler also ignores the "General Release" provision that covers "any and

all claims, demands, causes of action and liabilities of any kind whatsoever." *Id*. ¶ 4. And he ignores his agreement not to "participate in any action" against Eisai. *Id.* ¶ 6.

These provisions plainly bar Keeler from litigating any claims against Eisai, regardless of whether he pursues those claims on his own or on the government's behalf. Indeed, the False Claims Act ("FCA") expressly provides that where, as here, the government opts not to intervene, the relator accrues "the right to conduct the action." 31 U.S.C. §§ 3730(b)(4), (c)(3). That is significant because the Release fully discharged any and all claims against Eisai, whether past, present, or future. Release ¶¶ 3, 4, 6. Accordingly, Keeler has accrued the right to release his ability to pursue this litigation in any capacity — and he has done so.

Keeler nonetheless contends that the Release should not be enforced to bar his claims on the government's behalf because Keeler executed it *after* he filed his complaint under seal. But that only underscores the impropriety of Keeler's conduct here. Keeler did not need to accept a settlement payment in exchange for a broad release. He chose to do so — and to represent, falsely, that he had no other complaints pending against Eisai. *See* Release ¶ 13.

Keeler's arguments turn on 31 U.S.C. § 3730(b)(1), which states that an "action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." Keeler relies on *U.S. ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 722 (9th Cir. 1994), to suggest that the government's consent is required for dismissal even after it declines to intervene. Opp. 5-6. Keeler's reliance on *Killingsworth* is misplaced. There, the court recognized the government's right to question a settlement for good cause so *the court* could ensure the settlement was reasonable, but disagreed with the government that section 3730(b)(1) barred the relator from settling without the government's approval. *See Killingsworth*, 25 F.3d at 724. The appellate court rejected the idea that the FCA gives the

2

government "an absolute right to block a settlement and dismissal by withholding its consent," and directed the district court to dismiss the case (without the government's consent) if it approved the settlement on remand. *Id*. at 722-723. In reaching its decision, the court held that section 3730(b)(1) is properly interpreted in conjunction with its neighboring provision, section 3730(b)(2), which provides that the government may "intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information." *Id*. at 722. Section 3730(b)(1) thus protects the government's right to intervene and "ensures that legitimate claims … are not dismissed before the United States has been notified of the claims or has had opportunity to proceed with the action." *Minotti v. Lensink*, 895 F.2d 100, 104 (2d Cir. 1990); *Killingsworth*, 25 F.3d at 722 (provision has "limited application"; government consent not required for court-ordered dismissals). That rationale no longer applies once the government has had the opportunity to investigate and has opted to decline.

Making a release's enforceability entirely contingent on whether the release is executed before or after the filing of a relator's complaint also would reward gamesmanship and would be inconsistent with the Supreme Court's instruction that courts should decline to enforce a release only in narrow circumstances where "enforcement is outweighed … by a public policy." *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987). Given the strong interests in contract enforcement, an "agreement purport[ing] to waive a right to sue conferred by a federal statute" is generally upheld unless "the policies underlying that statute may in some circumstances render that waiver unenforceable." *Id.*

In this case, the public interest in uncovering fraud is not affected by enforcing the Release because the government is aware of, has investigated, and has declined to pursue Keeler's allegations. *See U.S. ex rel. Hall v. Teledyne Wah Chang Albany*, 104 F.3d 230, 233

3

(9th Cir. 1997); *U.S. ex rel. Radcliffe v. Purdue Pharma L.P.*, 600 F.3d 319, 332 (4th Cir. 2010). Keeler's argument that the Release *was executed* "during" the government's investigation is therefore irrelevant. Opp. 6. Keeler's allegations were *fully disclosed* to the government long before he executed the Release. And the government had *eight* times longer than the 60-day time period the FCA defines as reasonable to engage with Keeler during its investigatory process. Enforcing the Release under these circumstances could not possibly frustrate the incentives designed to encourage relator participation or compromise the government's investigation.

Keeler invokes *U.S. ex rel. El-Amin v. George Washington University*, 2007 U.S. Dist. LEXIS 32166 (D.D.C. May 2, 2007), and *U.S. ex rel. Longhi v. Lithium Power Technologies Inc.*, 481 F. Supp. 2d 815, 820 (S.D. Tex. 2007), as cases where courts declined to enforce releases "executed subsequent to filing a *qui tam* action." Opp. 7. But in both cases the releases were executed mere days after the *qui tam* actions were filed, and the government did not have any apparent knowledge of, let alone adequate time to investigate, relators' allegations. *See Longhi*, 481 F. Supp. 2d at 822; *El-Amin*, U.S. Dist. LEXIS 32166 at *18, 27. Keeler cites no case where a court failed to enforce a release executed 16 months after the government received notice of the action.

Allowing Keeler to escape the plain terms of his Release would *contravene* the public interest by "unduly rewarding" a litigant "that seek[s] to renege on [his] agreements." *U.S. ex rel. Whitten v. Triad Hosps., Inc.*, 2005 U.S. Dist. LEXIS 26208, at *16 (S.D. Ga. Oct. 27, 2005), *rev'd on other grounds*, 210 Fed. Appx. 878 (11th Cir. 2006). This Court should not permit Keeler to reap rewards from making material misrepresentations to obtain settlement funds and then, having succeeded in obtaining that significant benefit for himself, violate the promises he

4

made in exchange. Keeler offers no defense of his false representation "that as of the date he sign[ed]" the agreement with Eisai he had "not sought … any award or settlement from any source or proceeding." Release ¶ 6(a); *see also id.* ¶ 13 (committing that he had "no … other complaints or charges" against Eisai). And he offers no explanation of how he could possibly maintain this action while simultaneously "agree[ing] to cooperate with [Eisai] … in connection with any … litigation relating to any matter that occurred during [his] employment" and, conversely, not to "participate in any action" against Eisai with respect to the released claims. *Id.* ¶¶ 6, 11. Permitting Keeler's claims to proceed would allow Keeler to commit the very contractual violations that he agreed would entitle Eisai to injunctive relief against him. *See id.* ¶ 12.

In short, the government had 16 months to investigate before Keeler executed the Release and ultimately, fully informed, declined to intervene. Accordingly, enforcing the Release and dismissing this action will not impair any legitimate government interest. In the unlikely event that the government has a valid basis to revisit its declination decision, it can inform the Court of its wishes to seek leave to intervene belatedly for good cause, and pursue this action before the action is dismissed. But one thing is clear: Keeler has released his right to pursue this action and that release can and should be enforced, both as a matter of straightforward contract interpretation and for strong public policy reasons.

**II.   The Complaint Does Not Satisfy The Requirements Of Rule 8 And Rule 12(b)(6).**

Keeler's opposition confirms that his complaint does not satisfy Rule 8's basic requirements. He has identified no plausible factual allegations establishing that Eisai knowingly caused physicians and states to defraud the government. Instead, his complaint is composed of lengthy factual allegations of innocent conduct intertwined with conclusory assertions that Eisai violated the law. But nothing in his opposition identifies any pleaded facts

5

sufficient to take his allegations beyond mere suspicion and speculation. Because the Court should give no weight to legal conclusions "couched as … factual allegation[s]," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2006), it should dismiss the complaint in its entirety.

### A. Keeler's Personal Retaliation Claim Does Not State A Claim For Relief.

For reasons explained in Eisai's motion, Keeler's retaliation claim in Count II is barred by the Release. Keeler's opposition offers no response. Nor does he dispute that off-label marketing by itself is not an FCA violation. *See* Mot. 12–13. Count II does not state a claim for relief.

### B. Keeler's FCA Claims Do Not State A Claim For Relief.

Keeler also has not pleaded any of the essential elements of an FCA claim.

***Count I Fails To State A Claim***. Keeler argues that his complaint states a claim under 31 U.S.C. § 3729(a)(2), but he merely recites the elements of that claim, citing *Hopper v. Solvay Pharmaceuticals, Inc.*, 588 F.3d 1318, 1327 (11th Cir. 2009), and asserts that he has pleaded those elements. He disregards the ample legal authority establishing that communications about off-label uses are not inherently false and misleading and, in fact, often reflect the medically accepted standard of care. *See* Mot. 15-16. He also has identified no pleaded facts explaining why Eisai's alleged communications about off-label uses were false; no facts demonstrating how any allegedly false statements were material to the government's decision to reimburse claims; and no facts establishing that Eisai acted with the requisite intent. Although Keeler contends that Eisai "caused the states to submit false claims" on Form CMS-64 that "falsely certified that all drugs … were paid for in compliance with federal law," Opp. 12, he fails to identify any alleged false statement made by Eisai. Nor does he provide any insight as to how Eisai *caused* these alleged false certifications. And he identifies no allegations explaining how Eisai's alleged fraud

6

*proximately caused* physicians to write a prescription, and caused the government to pay, for an allegedly improper off-label use.

Keeler likewise asserts that his complaint states a claim under 31 U.S.C. § 3729(a)(1). But no such claim appears anywhere in his original complaint, the only complaint served on Eisai.[1]  Opp. 2 n.1.  In any event, the allegations in his never-served amended complaint are as deficient as his original complaint.  Even assuming Eisai encouraged doctors to prescribe Ontak for off-label uses and that those uses were ineligible for reimbursement, that still does not establish how Eisai induced physicians to submit *false* claims.  There is nothing false or fraudulent about engaging in truthful communications about off-label uses.  And Keeler's opposition points to no allegations providing a factual basis for believing Eisai convinced doctors not only to prescribe Ontak but to defraud the government.

***Count III Fails to State A Claim***.  Keeler contends that his complaint states a violation of 21 C.F.R. § 312.7 because he alleges that doctors prescribed Ontak off-label "as part of a nationwide program of experimentation sponsored by Eisai" and that this "program" was "akin to a clinical trial."  Opp. 13.  But section 312.7 precludes only the commercial distribution of a "new drug … used in a clinical investigation."  21 C.F.R. § 312.3(b).  Keeler provides no authority for the far-fetched notion that section 312.7 applies to programs that are not, in fact, clinical trials.  Nor does he provide any factual detail, or cite any regulatory authority, explaining *how* Eisai's alleged "program of experimentation" is "akin to" a clinical trial.  He can point to no factual allegations in the complaint explaining Eisai's alleged "program of experimentation." And he provides no meaningful response to the fact that an FDA "approved" drug, by definition,

---

[1]  Keeler asserts that his first amended complaint is the "operative complaint," but he places that assertion cheek-by-jowl with the candid admission that the amended complaint "was not served on Eisai."  Opp. 2 n.1.  Keeler should be required to comply with the ordinary rules of service (as well as the Court's briefing deadlines).

7

is not an "investigational new drug." In any event, Keeler identifies no allegations establishing a nexus between any asserted regulatory violation and the submission of any false claim. Keeler's conclusory assertions are built on speculation, piled upon speculation. They are not sufficient to state a claim for relief.

*Count IV Fails To State A Claim*. Keeler concedes that "providing a discount required by law is not an illegal kickback." Opp. 14. He nonetheless asserts that providing a statutorily defined discount to disproportionate share hospitals for Ontak was somehow fraudulent. *Id*. According to Keeler, Eisai used "flash cards" to educate physicians on how to "turn a profit" between the purchase price of Ontak and the amount submitted for reimbursement. *Id*. These allegations are also too speculative to state a claim for relief. Even though Keeler was a sales representative who, according to his allegations, was trained to "illustrate" to doctors how they could "turn a profit," *Id*., his complaint includes no specific factual allegations that flashcards were ever given by any specific sales representative to any specific doctor or left in any specific city or office, resulting in any submission of a false claim. Nor has he identified any allegations that explain whether the reimbursement amount the doctors allegedly claimed was in any way fraudulent. Moreover, as Eisai's motion explained, disproportionate share hospitals do not have the authority to seek reimbursement from State Medicaid Programs at an amount higher than the drug's acquisition cost, *see* 59 Fed. Reg. 25,110, 25,112 (May 13, 2004), whereas a physician may be able to seek reimbursement at a rate above the acquisition cost of drugs dispensed to non-Medicaid beneficiaries. To state a claim, Keeler must come forward with factual allegations establishing whether the alleged false claims pertain to Medicaid, Medicare, or potentially private claims. He has not satisfied even that basic requirement.

8

### C. The Complaint's General Allegations Fail To Establish A Right To Relief.

As Eisai's motion explained, Keeler's general allegations are not tied to the specific counts and do not state a claim for relief. In response, Keeler concedes that the practices described "are not per se illegal" "in and of themselves." Opp. 15. He nonetheless maintains that these practices "when read together and considered in the aggregate … illustrate a pattern of fraudulent activity." *Id.* But if certain practices are by themselves lawful, no "reasonable inference" can be drawn that would establish liability for those practices, absent further factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Nothing in Keeler's "general allegations" can save his specific counts from dismissal.

## III. The Complaint Does Not Satisfy The Requirements Of Rule 9(b).

Keeler acknowledges that Rule 9(b) requires that FCA claims be pled with particularity, but he does not provide any details of the alleged fraud that forms the basis of this FCA action. In fact, Keeler does not even satisfy the standard he quotes: at no point does Keeler set forth "precisely what statements were made" by Eisai, nor "the time and place of each such statement and the person responsible for making [it]." *U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007); Opp. 15. He similarly fails to describe "the content of such statements and the manner in which they misled the plaintiff;" in this case, causing the government to pay false claims. *Id*.

Keeler seeks to avoid this pleading deficiency, relying on the Eleventh Circuit's *Hopper* decision. Opp. 11–12. But *Hopper* merely held that a court may, "in the appropriate case," permit "general allegations of improper government payments to third parties, supported by factual or statistical evidence to strengthen the inference of fraud … [to] satisfy the particularity requirements of Rule 9(b)" for a claim under 31 U.S.C. § 3729(a)(2). 588 F.3d at 1329. Keeler has not explained how or why the government's payments for Ontak were "improper." And he

9

has not provided any factual or statistical evidence to "strengthen the inference of fraud" beyond mere speculation. *Id*.

Keeler's related argument that a more lenient standard applies because the factual information he requires is within Eisai's possession is also meritless. The inference Keeler seeks — that false claims were made — could only be warranted if his legal theory is supported "with factual allegations that make [his] theoretically viable claim plausible." *U.S. ex rel. Hill v. Morehouse Med. Assoc., Inc.*, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003); *see also U.S. ex rel. Lockhart v. Gen'l Dynamics Corp.*, 529 F. Supp. 2d 1335, 1341 (N.D. Fla. 2007) (inquiry turns on whether there is a "reliable basis" for the fraud allegations). Keeler has provided no factual basis for his belief that Eisai caused false claims to be paid, but instead relies entirely on conclusory allegations. *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1314 n.25 (11th Cir. 2002).

Regardless of what standard applies, Keeler's complaint must contain enough particulars to support the assertion that false claims were made. *Hopper*, 588 F.3d at 1327-28. But Keeler fails to plead with particularity how the alleged fraud was perpetrated, including what false statements were made, when they were made and by whom, as well as how those statements caused the payment of a false claim by the government. Nor does he plead facts showing that Eisai *intended* for the government to rely on any alleged false statements in deciding whether to pay a claim. *See id*. at 1330 (dismissing relator's complaint for failing to "link the alleged false statements to the government's decision to pay false claims").

## CONCLUSION

For these reasons, and the reasons set forth in Eisai's motion to dismiss, the Court should enforce the Release and dismiss the complaint in its entirety with prejudice.

<table>
<tr><td>Dated: June <b>3</b>, 2011</td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>/s/ <i>Patricia E. Lowry</i></td></tr>
<tr><td>
J. Sedwick Sollers III<br>
Mark A. Jensen<br>
Ashley C. Parrish<br>
Jamie A. Lang<br>
KING & SPALDING LLP<br>
1700 Pennsylvania Ave., N.W.<br>
Washington, D.C. 20006<br>
Telephone: (202) 737-0500<br>
Facsimile: (202) 626-3737<br>
Email: wsollers@kslaw.com<br>
Email: mjensen@kslaw.com<br>
Email: jlang@kslaw.com<br>
Email: aparrish@kslaw.com
</td><td>
Patricia E. Lowry<br>
   Florida Bar No. 332569<br>
Amy Bloom<br>
   Florida Bar No. 0506893<br>
SQUIRE, SANDERS & DEMPSEY (US) LLP<br>
1900 Phillips Point West<br>
777 South Flagler Drive<br>
West Palm Beach, FL 33401-6198<br>
Telephone: 561-650-7200<br>
Facsimile: 561-655-1509<br>
Email: patricia.lowry@ssd.com<br>
Email: amy.bloom@ssd.com
</td></tr>
</table>

*Counsel for Defendant Eisai Inc.*

### **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on June **3**, 2011, on all counsel of record on the Service List below in the manner specified.

*/s/ Amy Bloom*
Amy Bloom

## SERVICE LIST

### VIA CM/ECF

Gary Michael Farmer, Jr.
Steven R. Jaffe
Seth Lehrman
**FARMER JAFFE WEISSING EDWARDS FISTOS & LEHRMAN PL**
425 N Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Ph: (954) 524-2820
Fax: (954) 524-2822
Email: gary@pathtojustice.com

*Attorneys for Michael Keeler, Relator*

James P. Gitkin
**SALPETER GITKIN, LLP**
Museum Plaza — Suite 503
200 South Andrews Avenue
Fort Lauderdale, Florida 33301
Ph: (954) 467-8622
Fax: (954) 467-8623
Email: jim@salpetergitkin.com

*Co-Counsel for Michael Keeler, Relator*

Theodore L. Radway
**U.S. ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF FLORIDA**
99 N.E. 4th Street Suite 300
Miami, FL 33132
Ph: (305) 961-9337
Fax: (305) 530-7139
Email: ted.radway@usdoj.gov

*Attorneys for United States of America*

Mark Alan Levine
**U.S. ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF FLORIDA**
99 N.E. 4th Street Suite 300
Miami, FL 33132
Ph: (305) 961-9303
Fax: (305) 530-7139
Email: mark.lavine@usdoj.gov

*Attorneys for United States of America*

VIA U.S. MAIL

| | |
|---|---|
| Joyce R. Branda | Candice D. Hooper |
| Patricia R. Davis | **ASSISTANT ATTORNEY GENERAL** |
| Arthur S. Di Dio | **CIVIL INVESTIGATIONS UNIT** |
| **UNITED STATES DEPARTMENT OF JUSTICE** | **MEDICAID FRAUD CONTROL UNIT** |
| **COMMERCIAL LITIGATION BRANCH** | **OFFICE OF THE ATTORNEY GENERAL** |
| 601 D Street NW | 900 East Main Street |
| Washington, DC 20004 | Richmond, Virginia |
| Ph: (202) 305-2335 | Ph: (804) 371-6017 |
| Email: civil.fraud@usdoj.gov | Fax: (804) 786-0807 |
| | Email: chooper@oag.state.va.us |
| *Attorneys for United States of America* | *Attorneys for the Commonwealth of Virginia* |