# KING & SPALDING LLP

King & Spalding LLP
1700 Pennsylvania Ave, NW
Suite 200
Washington, D.C. 20006-4707
Tel: +1 202 737 0500
Fax: +1 202 626 3737
www.kslaw.com

Kevin M. Dinan
Partner
Direct Dial: +1 202 661 7916
kdinan@kslaw.com

September 22, 2011

**VIA E-MAIL**

Steven F. Grover, Esquire
Grover Whistleblower & Employee Rights Center
One East Broward Blvd
Suite 700
Fort Lauderdale, FL  33301

   **Re:    U.S.A. ex rel. Keeler v. Eisai Inc.**

Dear Steve:

   This is in response to your September 12, 2011 letter regarding Eisai's response to plaintiff's first request for production of documents.  As we have previously advised you, plaintiff's first request for production, which seeks, for example, all documents relating to the "research, development, marketing, sales, and/or policies and/or procedures" relating to Ontak, Fragmin, Aloxi, and Dacogen, would require the production of virtually every document maintained by Eisai relating to these drugs.  Notwithstanding the fact that we have advised you of this, and the fact that Mr. Keeler was employed as a sales representative for Eisai and should be familiar with the specific types of documents maintained by Eisai, you made no effort in your September 12 letter to narrow the scope of plaintiff's requests.  Instead, you continue to seek outrageously broad requests, which in addition to the example above, include requests for all "documents relating to conferences and/or meetings relating in any way to" these drugs, and every document in the company that mentions Mr. Keeler.

   There is simply no basis for requests framed as broadly as plaintiff's, which potentially could result in the production of millions of documents.  Accordingly, we again urge that plaintiff narrow his requests so that they are reasonable and directed at documents that are actually relevant to the issues in this case.  Your September 12 letter provides scant discussion of the purported relevance of plaintiff's requests.  Plaintiff's refusal to narrow his requests suggests that the intended effect of these requests is not to obtain legitimate discovery, but to impose as much burden and cost upon Eisai as possible.

   Plaintiff's requests are also almost uniformly unlimited in the time period covered by the requests.  While you have attempted to limit the time period in your September 12 letter, you still

Steven F. Grover
September 22, 2011
Page 2

seek six years of documents for Fragmin, five years of documents for Ontak, and three years of documents for Aloxi and Dacogen. Yet Mr. Keeler was only employed at Eisai from September of 2006 to April of 2009. Because of that and other reasons, Eisai believes that the three-year period for which it has agreed to produce documents, from 2006 through 2009, the period when Mr. Keeler would have had knowledge of the activities of Eisai, is the relevant and reasonable time period for plaintiff's requests. By seeking to double the years covered by plaintiff's requests, that greatly increases the burden upon Eisai. There is no justification for that additional burden, especially since plaintiff has failed to plead his claims with the requisite particularity and has filed not just two, but three amended complaints; and given that the only product sold by Mr. Keeler was Ontak.

Because of the incredibly broad nature of plaintiff's requests, Eisai was left to essentially guess at what plaintiff was actually seeking. Your September 12 letter does little to remedy that situation. Notwithstanding this, Eisai only stood on its objection in response to one request, which seeks witness statements obtained by counsel. With respect to the remaining requests, Eisai either agreed to produce categories of documents or informed you that it did not have any responsive documents.

Eisai chose to identify certain categories of documents in an effort to provide information at which it believes plaintiff's requests are actually directed. In addition to these categories of documents, and other categories of documents identified below that Eisai is agreeable to producing, Eisai has also identified 14 document custodians whose e-mails Eisai will search for documents responsive to plaintiff's requests: Cynthia Schwalm (President, U.S. Pharmaceuticals), Steve Vickers (Field Sales Director), Lawrence Kristoff (Lymphoma Sales Director), Randy Lawson (District Manager), Heather Percy (District Manager), Brad Pierson (Current Senior Oncology Specialist), Craig Laferty (Current Product Manager, Dacogen), Evan Meiskin (Oncology Sales Specialist), David Trexler (Current Vice President, U.S. Marketing), Sreenivas Rao (Current Product Director, Ontak), Mary Myers (Current Director, Sales Training & Development), John Schillo (Senior Manager, National Reimbursement), Mary Martin Roberts (Current Director, Market Accounting & Reimbursement Services) and Mr. Keeler. Given the positions and responsibilities of these individuals and the fact that they include the "priority" individuals for whom plaintiff seeks depositions, these custodians should have documents responsive to your requests, and Eisai believes that these searches will yield a substantial volume of documents.

With respect to your statement that the documents have yet to be produced, as we previously advised you, the reason no documents have been produced to date is because you have failed to provide us with any comments to the proposed protective order that we sent to you on August 25. When we sent you the proposed order, we stated that we wanted to have the protective order "executed jointly by the parties so we can file it with the Court tomorrow for approval and begin the document production." You did not even acknowledge receipt of the draft protective order until September 2, and your only comment was to ask whether the proposed protective order was based upon any court's form order. We promptly advised you that it was not, and also provided you with copies of the two orders upon which our proposed order was based. You have still not agreed to sign the proposed protective order, nor did you raise any

Steven F. Grover
September 22, 2011
Page 3

issues until our call on Monday, September 19. As you know, in the parties' joint scheduling report of May 6, 2011, the parties stated that "Eisai intends to circulate a proposed protective order regarding the confidential treatment of documents produced in this case." At no time did you ever voice an objection to that concept. We have documents prepared for production after entry of the protective order. We hope we can resolve any issues regarding the protective order in the next few days and file it with the Court so that we can begin the production of documents.

With respect to Eisai's general objections, as you are aware, Eisai did not solely rely upon those objections in response to the particular document requests. Eisai provided specific and detailed objections and explanations for those objections in response to each of plaintiff's requests.

As we previously advised you, Eisai has continued to analyze your requests to see whether there are ways of narrowing the issues between the parties. As a result of these efforts, set forth below is a summary of each of plaintiff's requests, the extent to which we believe issues have already been resolved, what Eisai has agreed to produce to date and, where applicable, additional categories of documents, beyond those mentioned above, that Eisai is agreeable to producing.

**REQUEST NO. 1**

In Request No. 1, plaintiff sought a "complete privilege log for any and all documents that have been requested and that you contend are privileged."

As Eisai advised you, it will produce a privilege log within 30 days after completion of its production for those documents, if any, that Eisai has agreed to produce in response to plaintiff's first request for production that are being withheld under a claim of privilege. Given the extremely broad nature of plaintiff's requests, and plaintiff's refusal to date to narrow or provide any more specificity regarding the documents requested, Eisai's proposal is reasonable and complies with local Rule 20.1(g), which does not set a timetable for the production of a privilege log. *Mitsui Sumitomo Ins. Co. v. Carbel, LLC*, 2011 U.S. Dist. LEXIS 74148, *15 n.3 (S.D. Fla., July 11, 2011).

**REQUEST NO. 2**

In Request No. 2, plaintiff seeks "any and all documents that you have obtained through subpoenas, subpoenas duces tecum and/or that you have received and/or obtained from third parties that relate in any way to the case at bar and/or the allegations in the Second Amended Complaint therein."

There should be no dispute regarding Eisai's response to this request. Eisai advised you that it presently has no documents that are responsive to this request, and it also stated that it would produce copies of any documents if obtained through subpoenas, subpoenas duces tecum, or informal request by counsel to third-parties in this action.

Steven F. Grover
September 22, 2011
Page 4

### REQUEST NO. 3

In Request No. 3, plaintiff seeks "any and all documents relating in any way to Michael Keeler, including, but not limited to, his personnel and/employment file, documents concerning his employment by you, e-mails to/or from him, and/or e-mails that refer to him in any way." As we advised you, this request seeks every document that mentions Mr. Keeler, a former employee of Eisai, without any limitation as to time period or subject matter. Moreover, as you and I have previously discussed, Mr. Keeler failed to return his laptop when he left Eisai and should have his e-mails.

Notwithstanding the fact that plaintiff refuses to narrow this request, in addition to the personnel file for Mr. Keeler, which Eisai previously agreed to produce, Eisai will also produce non-privileged e-mails from Mr. Keeler's e-mail files.

### REQUEST NO. 4

In Request No. 4, plaintiff seeks "a comprehensive list of the full names of all persons employed by you at any time from 2004 through the present, including their last-known home addresses, phone numbers, and e-mail addresses." Again, plaintiff has failed to limit this request in any way and has provided no justification for the relevance of the names of every person who has been employed by Eisai since 2004.

Notwithstanding this fact, Eisai previously agreed to produce the current employee directory for Eisai, as well as organizational charts from 2006 to the present. Eisai does not have the employee directory for earlier years because it is an evergreen system that is regularly updated.

### REQUEST NO. 5

Request No. 5 seeks expert reports and resumes.

Eisai advised you that it will provide its expert disclosures, including the expert's report and resume, on or before the date set for serving its expert disclosures. There should be no dispute regarding this response.

### REQUEST NO. 6

In Request No. 6, plaintiff seeks "any and all documents showing, reflecting, and/or relating in any way to the communications between you and the U.S.A., including, but not limited to the FDA, the Justice Department, and CMS (and any of their agents or employees), relating to Ontak, Fragmin, Aloxi and/or Dacogen." This request seeks those documents irrespective of the subject matter of the communication, or whether that subject matter has any relevance to the issues in this litigation.

Notwithstanding the breadth of plaintiff's request, Eisai has previously agreed that it will produce all correspondence from 2006 to 2009 between Eisai's regulatory affairs department and

Steven F. Grover
September 22, 2011
Page 5

the FDA concerning (i) FDA Form 2253 regarding promotional material, (ii) applications filed with the FDA for new or expanded indications for Ontak and Dacogen, and (iii) any FDA warning letters for Ontak, Fragmin, Aloxi, or Dacogen.  We believe these documents provide responsive information regarding the approval, non-approval, marketing, and use of these drugs that you indicated was the focus of the request in your September 12 letter.  In addition, Eisai will produce Eisai's quarterly submissions to CMS sufficient to reflect the Average Sales Price ("ASP"), Average Manufacturer Price ("AMP") and Best Price for these four drugs for 2006 through 2009, to the extent they exist.  Eisai will also produce its executed Medicaid Rebate Agreement with the Secretary of Health and Human Services.

**REQUEST NO. 7**

In Request No. 7, plaintiff requests "any and all documents relating to and/or reflecting learned treatises that you intend to introduce into evidence and/or use for rebuttal or impeachment purposes."

There should be no issue regarding Eisai's response.  Eisai stated that it will produce those learned treatises that it intends to introduce into evidence or use for rebuttal purposes at the time specified in the Court's July 5, 2011 Order, that it does not presently know what learned treatises it intends to introduce into evidence or use for rebuttal purposes, and that it does not anticipate that it will know those documents it intends to use until exhibit lists are exchanged.

**REQUEST NOS. 8 to 11**

In Request Nos. 8 to 11, plaintiff seeks "any and all documents relating to your research, development, marketing, sales, and/or policies and/or procedures relating to [Ontak, Fragmin, Aloxi, and Dacogen]."  These requests seek virtually every document that Eisai has relating to these four products.  Moreover, documents relating to research and development of these products are not relevant to any of the issues in this case.

Notwithstanding the incredibly broad nature of these requests, Eisai previously agreed to provide its health care provider policies, annual business plans, and its employee policies and principles of corporate conduct for the sales, marketing, and reimbursement of these four drugs from 2006 to 2009.  In addition to what Eisai has already agreed to produce, Eisai will also produce for these four products, to the extent they exist, its clinical reprints for on- and off-label uses, representative incentive compensation plans for sales representatives, HCP target lists, and sampling policies for the time period 2006 to 2009.

Eisai has also agreed to provide annual sales reports for these four products for 2006 to 2009 in response to Request Nos. 52 to 55.  It is also providing summary printouts of apparently what plaintiff has labeled as "COERS" reports for the years 2006 to 2009, to the extent they exist, in response to Request Nos. 56 to 59.  These documents provide substantial sales information, including market share, unit sales, and other details.  Eisai refers to certain information distributed to sales personnel, not as "COERS" reports, but as Oncology Field Force

Steven F. Grover
September 22, 2011
Page 6

Reports and has confirmed existence of this data back to May 2008.  Eisai is continuing to explore whether there are summary sales documents prior to May 2008 for the four products.

**REQUEST NO. 12**

Request No. 12 seeks witness statements obtained by counsel relating to this case.

Eisai properly objected to this request because it seeks documents subject to the attorney-client and attorney work product privileges.  Moreover, Local Rule 26.1(g)(3)(C) provides that attorney-client or work product privileged material created after commencement of an action is exempt from the privilege log requirement.

**REQUEST NO. 13**

In Request No. 13, plaintiff seeks "any and all documents relating in any way to your agreement with Ligand Pharmaceutical in 2006 to purchase all the rights to Ontak and Targretin, including, but not limited to, any and all documents and/or communications preceding and following that agreement."

Eisai's response is appropriate and will provide responsive documents plaintiff is seeking.  It has agreed to produce a copy of the purchase agreement as well as due diligence materials relating to the possible off-label marketing of Ontak or the warning letter from the FDA to Ligand Pharmaceutical regarding Ontak.

**REQUEST NO. 14**

In Request No. 14, plaintiff seeks "any and all documents relating in any way to your marketing and/or sales of Ontak."  Eisai objected to this request because it was duplicative of Request No. 8.

You acknowledge in your September 12 letter that the request is a subset of what plaintiff already sought in Request No. 8, so the resolution of that request should apply here.

**REQUEST NO. 15**

In Request No. 15, plaintiff seeks "any and all documents relating in any way to the pricing, sales, and/or reimbursement rates, of Aloxi to and/or for health care providers, the U.S.A., Medicare, Medicaid, and/or the 50 States of the U.S.A."

Again, notwithstanding the exceedingly broad nature of this request, Eisai has already agreed to produce its health care provider policies, annual business plans, and summary of annual sales, as well as its employee policy and principles of corporate conduct, for sales, marketing, or reimbursement of Aloxi from 2006 to 2009.  In addition to these items, Eisai will also produce monthly sales reports for Aloxi for the years 2006 through 2009.  Eisai is also providing summary printouts of what it believes plaintiff has identified as COERS reports for the years 2006 to 2009, to the extent they exist, in response to Requests Nos. 56 to 59.  These

Steven F. Grover
September 22, 2011
Page 7

documents provide substantial sales information, including market share, unit sales, and other details. Eisai is continuing to explore whether there are summary sales documents prior to May 2008 for sales of Aloxi. In addition, Eisai will also produce Eisai's quarterly submissions to CMS sufficient to reflect the Average Sales Price ("ASP"), Average Manufacturer Price ("AMP") and Best Price for Aloxi for 2006 through 2009, to the extent they exist.

**REQUEST NOS. 16 to 19**

In Request Nos. 16 to 19, plaintiff seeks "any and all documents relating to conferences and/or meeting relating in any way to [Ontak, Aloxi, Fragmin, or Dacogen]." This request is not limited in any way by subject matter, attendees, or time-period. Nor has plaintiff explained how this request, unburdened by a subject matter limitation, is relevant to the issues in this case.

Notwithstanding these deficiencies, Eisai previously agreed to provide agendas and presentation materials that exist for national sales meetings and plan of action meetings for 2006 to 2009. In addition to those documents, Eisai is reviewing its documents to determine what documents it has regarding speaker programs, as well as speaker training for those programs for the years 2006 through 2009.

**REQUEST NOS. 20 to 23**

In Request Nos. 20 to 23, plaintiff requests "any and all documents relating to Medicare reimbursement rates and/or codes for [Ontak, Aloxi, Fragmin and Dacogen], as well as any and all medical services related to the administration of [Ontak, Aloxi, Fragmin and Dacogen]."

Notwithstanding the fact that this request fails to specify the particular aspect of coding or reimbursement sought, Eisai previously agreed to produce sales training materials from 2006 to 2009 and reimbursement guides for 2009 for Ontak, Aloxi, Fragmin, and Dacogen. Eisai also advised plaintiff that responsive documents are available on the eisaireimbursement.com website. In addition, the CMS website posts the quarterly Average Sales Price values for Part B drugs dating back to 2005 (https://www.cms.gov/McrPartBDrugAvgSalesPrice/). These values represent the Medicare reimbursement rates. Eisai does not believe that it has reimbursement guides for years prior to 2009, and it is in the process of confirming that fact.

**REQUEST NOS. 24 to 27**

Request Nos. 24 to 27 seek "any and all documents relating to Medicaid reimbursement rates and/or codes for [Ontak, Aloxi, Fragmin, and Dacogen], as well as any and all medical services related to the administration of [Ontak, Aloxi, Fragmin, and Dacogen]."

Again, notwithstanding plaintiff's failure to identify the particular aspect of coding or reimbursement sought, Eisai has previously agreed to produce sales training materials from 2006 to 2009 and reimbursement guides for 2009 for Ontak, Aloxi, Fragmin, and Dacogen. In addition, Eisai has agreed to provide summary reports of Medicaid sales for these four drugs, to the extent they exist, for the years 2006 to 2009, in response to Request Nos. 61, 63, 65 and 67. Eisai will also produce its executed Medicaid Rebate Agreement with the Secretary of Health

Steven F. Grover
September 22, 2011
Page 8

and Human Services.  Eisai has also advised plaintiff that documents responsive to these requests are available on the eisaireimbursement.com website.  Additional data regarding product pricing, reimbursement and utilization is publicly available by selecting the "State Drug Utilization Data" option in the Medicaid Drug Rebate Program section of the CMS website (https://www.cms.gov/ medicaiddrugrebateprogram/).

**REQUESTS NOS. 28 to 31**

In Requests Nos. 28 to 31, plaintiff requested "any and all documents relating to the use of ICD-9 diagnosis codes for [Ontak, Aloxi, Fragmin, and Dacogen]."  Again, plaintiff failed to identify the particular aspect of coding or reimbursement to which its request is directed.

Notwithstanding this fact, Eisai has already agreed to produce sales training materials from 2006 to 2009 and reimbursement guides for 2009 for Ontak, Aloxi, Fragmin, and Dacogen, and advised plaintiff that documents responsive to these requests are also available on the eisaireimbursement.com website.  The reimbursement guides for the four drugs and the sales team reimbursement training materials address ICD-9 codes.

**REQUEST NOS. 32 to 35**

In Request Nos. 32 to 35, plaintiff sought "any and all documents relating to the use of CMS Claim Form 1450 (UB-04) for [Ontak, Aloxi, Fragmin, and Dacogen]."  Form 1450 is a form that is submitted to CMS by hospitals, not pharmaceutical companies such as Eisai.

Eisai has already agreed to produce sales training materials from 2006 to 2009 and reimbursement guides for 2009 for Ontak, Aloxi, Fragmin, and Dacogen.  It also advised plaintiff that documents responsive to these requests are available on the eisaireimbursement.com website.  The reimbursement guides for the four drugs and sales team training materials discuss the codes on CMS-1450s.

**REQUEST NOS. 36 to 39**

In Request Nos. 36 to 39, plaintiff sought "any and all documents relating to the use of CPT codes for [Ontak, Aloxi, Fragmin, and Dacogen]."  CPT codes are a type of HCPCS code, which make these requests duplicative of Request Nos. 44 to 47.  They are codes that appear on CMS Claim Forms 1450 and 1500 submitted by hospitals and health care providers, respectively. They are not submitted to CMS by pharmaceutical companies.

Eisai has already stated that it will produce sales training materials from 2006 to 2009 and reimbursement guides for 2009 for Ontak, Aloxi, Fragmin, and Dacogen, and advised plaintiff that documents responsive to these requests are also available on the eisaireimbursement.com website.  The reimbursement guides for the four drugs and the sales team reimbursement training materials discuss CPT codes.

Steven F. Grover
September 22, 2011
Page 9

**REQUEST NOS. 40 to 43**

In Request Nos. 40 to 43, plaintiff sought "any and all documents relating to the use of revenue codes for [Ontak, Aloxi, Fragmin, and Dacogen]."  Revenue codes appear on Form 1450 and identify the hospital cost center that is billing for the product.  Again, Form 1450 is submitted to CMS by hospitals, not pharmaceutical companies such as Eisai.

Eisai has already advised plaintiff that it will produce sales training materials from 2006 to 2009 and reimbursement guides from 2009 for those four products, and that documents responsive to these requests are also available on the eisaireimbursement.com website.  The reimbursement guides for the four drugs discuss revenue codes.

**REQUEST NOS. 44 to 47**

In Request Nos. 44 to 47, plaintiff seeks "any and all documents relating to the use of HCPCS codes for [Ontak, Aloxi, Fragmin, and Dacogen]."  Again, these codes appear on CMS Claim Forms 1450 and 1500 submitted by hospitals and health care providers, respectively.  They are not submitted to CMS by pharmaceutical companies.

Eisai has already agreed to produce sales training materials from 2006 to 2009 and reimbursement guides for 2009 for those four products, and has advised plaintiff that documents responsive to these requests are also available on the eisaireimbursement.com website.  The reimbursement guides and the sales team reimbursement training materials discuss HCPCS codes.

**REQUEST NOS. 48 to 51**

In Request Nos. 48 to 51, plaintiff sought "any and all documents relating to the use of CMS Claim Form 1500 (Medicare Part B) for [Ontak, Aloxi, Fragmin, and Dacogen]."  CMS Claim Form 1500 is submitted by health care providers, not by pharmaceutical companies.

Eisai has previously agreed to produce sales training manuals from 2006 to 2009 and reimbursement guides for 2009 for those four products, and advised plaintiff that documents responsive to these requests are also available on the eisaireimbursement.com website.  The reimbursement guides and the sales team training materials discuss CMS Claim Form 1500.

**REQUEST NOS. 52 to 55**

In Request Nos. 52 to 55, plaintiff seeks "any and all documents, including, but not limited to, invoices, bills, sales reports and sales history summaries, relating to your sales of [Ontak, Aloxi, Dacogen, and Fragmin] from 2006 through the present."

Notwithstanding the extremely broad nature of these requests, which seek every document relating to any sale of those four drugs, Eisai has already agreed to produce annual sales reports for Ontak, Aloxi, Dacogen, and Fragmin, from 2006 to 2009.  Eisai will also produce monthly sales reports for these four drugs for the years 2006 through 2009.  In addition,

Steven F. Grover
September 22, 2011
Page 10

Eisai is producing what plaintiff has identified as COERS reports for the years 2006 to 2009, to the extent they exist, in response to Requests Nos. 56 to 59. These documents provide substantial sales information, including market share, unit sales, and other details.

**REQUEST NOS. 56 to 59**

In Request Nos. 56 to 59, plaintiff sought "any and all COERS reports relating to [Ontak, Aloxi, Dacogen, and Fragmin] sales from 2006 through the present."

Other than the date range contained in plaintiff's request, we should not have an issue with these requests. As noted previously, Eisai has agreed to produce summary printouts of what it believes plaintiff has identified as COERS reports (Oncology Field Force Reports) that exist for the sales of these four products for 2006 through 2009. These reports provide, among other things, estimates of the number of units sold to hospitals and health care providers, as well as the corresponding dollar figures and market share. The years 2006 to 2009 are the years that Mr. Keeler was employed by Eisai, and Eisai believes that is the appropriate and relevant time-period for these requests. Eisai has confirmed the existence of this data back to May 2008, and is continuing to explore whether there are summary sales documents prior to May 2008 for the four products.

**REQUEST NOS. 60, 62, 64, and 66**

In Request Nos. 60, 62, 64, and 66, plaintiff requests "any and all documents relating in any way to the percentage(s), fraction(s), and/or number of sales of [Ontak, Aloxi, Fragmin, and Dacogen] -- actual, estimated, and/or otherwise -- that are, were, have been, and/or will be for use by Medicare beneficiaries relating in any way to any and all periods of time that touch upon, to any extent, the years 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, and/or 2013." These requests seek documents covering a ten-year period, including years that have not yet occurred.

Eisai has agreed to produce summary reports of Medicare sales for Ontak, Aloxi, Fragmin, and Dacogen, to the extent they exist, for the years 2006 to 2009, which are the years that Mr. Keeler was employed by Eisai, and which are the years that Eisai believes are relevant to plaintiff's claims.

**REQUEST NOS. 61, 63, 65, and 67**

In Request Nos. 61, 63, 65, and 67, plaintiff has requested "any and all documents relating in any way to the percentage(s), fraction(s), and/or number of sales of [Ontak, Aloxi, Fragmin, and Dacogen] -- actual, estimated, and/or otherwise -- that are, were, had been, and/or will be for use by Medicaid beneficiaries, relating in any way to any and all periods of time that touch upon, to any extent, years 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, and/or 2013." These requests seek documents covering a ten year period, including years that have not yet occurred.

Steven F. Grover
September 22, 2011
Page 11

Eisai has agreed to produce summary reports of Medicaid sales for Ontak, Aloxi, Fragmin, and Dacogen, to the extent they exist, for the years 2006 to 2009, which are the years that Mr. Keeler was employed by Eisai, and which are the years that Eisai believes are relevant to plaintiffs' claims. These summary reports include Medicaid rebate data. In addition, data regarding product pricing, reimbursement and utilization is also available by selecting the "State Drug Utilization Data" option in the Medicaid Drug Rebate Program section of the CMS website (https://www.cms.gov/medicaiddrugrebateprogram/).

**REQUEST NO. 68**

In Request No. 68, plaintiff seeks "any and all documents relating in any way to your deliveries, provisions, distributions, marketing, revenues, profits, and/or sales of Ontak, Aloxi, Fragmin, and/or Dacogen, directly and/or through third parties to [approximately 300 health care providers]."

Notwithstanding the incredibly broad nature of this request, Eisai has already agreed to produce Oncology Field Force Reports that exist for 2006 to 2009 for these health care providers, which provide substantial sales information relating to these providers.

**REQUEST NO. 69**

In Request No. 69, plaintiff requests "any and all documents relating in any way to your deliveries, provisions, distributions, marketing, revenues, profits, and/or sales of Ontak, Aloxi, Fragmin, and/or Dacogen, directly and/or through third parties to [an additional approximately 55 health care providers].

Notwithstanding the incredibly broad nature of this request, coupled with Request No. 68, Eisai has already agreed to produce Oncology Field Force Reports that exist for 2006 to 2009 for these health care providers, which provide substantial sales information relating to these providers.

The information Eisai has agreed to produce satisfies the purpose of civil discovery. It will provide plaintiff with relevant information that will enable this matter to be resolved on a full and accurate understanding of the facts. Plaintiff has not explained how requests for information regarding products other than Ontak, or time periods outside plaintiff's employment are relevant to plaintiff's claim, or why Eisai should have to search the entire company to locate potentially responsive documents.

Steven F. Grover
September 22, 2011
Page 12


     We hope that plaintiff will give serious consideration to our proposals, and that he will in good faith seek to limit the scope of his requests.  I look forward to speaking with you about these issues next week.

<div style="margin-left: 50%;">

Respectfully,

Kevin M. Dinan

</div>

cc:    J. Sedwick Sollers III, Esq.
       Mark A. Jensen, Esq.
       Jamie A. Lang, Esq.
       Patricia E. Lowry, Esq.
       Amy Bloom, Esq.
       Seth Lehrman, Esq.
       Gary Farmer, Esq.
       James P. Gitkin, Esq.