UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:09-CV-22302-WILLIAMS/TURNOFF

UNITED STATES OF AMERICA
*EX REL.* MICHAEL KEELER, ET AL,

vs.

EISAI, INC.
---------------------------------------------------/

**RELATOR'S OMNIBUS MEMORANDUM IN OPPOSITION TO
DEFENDANT EISAI INC.'S MOTION FOR PROTECTIVE ORDER
CONCERNING DEPOSITIONS AND CONFIDENTIALITY ORDER [DE 160],
AND MOTION TO COMPEL WITNESS DEPOSITIONS, RULE 30(B)(6) DEPOSITION
OF EISAI, DISCOVERY HEARINGS EVERY 45 DAYS, AND OTHER RELIEF**

Relator Michael Keeler, for himself and the U.S.A. (hereinafter referred to collectively as "Keeler"), hereby opposes Defendant Eisai Inc.'s Motion for Protective Order [DE 160], and respectfully moves this Honorable Court to order Eisai to:

(1) fully cooperate in scheduling, submitting to, and carrying out its Rule 30(b)(6) deposition by January 30, 2012;

(2) fully cooperate in scheduling and carrying out all individual witnesses that were noticed and/or requested in writing of eight (8) present and former employees, as well as and/or including employee Brad Pierson, by January 30, 2012;

(3) fully cooperate in scheduling and carrying out of another ten (10) depositions in February 2012; and

(4) produce documents in native, searchable format whenever possible.

In addition, Relator respectfully requests that the Court:

(5) grant Relator leave to conduct thirty (30) depositions, not ten (10) (the presumptive limit under Local Rules in more typical civil cases), because of the complexity of this case and the existence of hundreds of witnesses (Relator reserves his right to conduct additional depositions thereafter);

(6) either find that Eisai has waived its right to claim privileges, for failure to timely or even tardily produce any privilege log or, in the alternative, order Eisai to produce a complete privilege log by January 30, 2012; and

(7) conduct discovery conferences every forty-five (45) days for the remainder of the ten-month discovery period, because the last half year clearly shows that Eisai needs to be monitored and held accountable for any future delay tactics or other failures to cooperate in discovery, and because in any event the complexity of this case necessitates such oversight of discovery disputes.

Although expedited ruling on these matters is formally requested under Local Rules and the Southern District of Florida's Discovery Practices Handbook, it is pointed out that much of the relief sought is simply the opposite of that which Eisai has sought in its recently filed motions.

Relator hereby certifies that he has conferred in good faith with defense counsel prior to filing the instant Motion, but that defense counsel has made clear that Eisai does not agree to any of the relief requested.

**All Rights Are Reserved Due to Insufficient Time to Prepare Opposition Memorandum.**

As a preliminary matter, Eisai filed its very recent Motion for Protective Order and Request for Expedited Ruling [DE 160] only three (3) business days ago. Relator, for himself and the U.S.A., has not been allowed the requisite length of time to oppose it in advance of tomorrow's 2 p.m. hearing. This is especially significant because preparing a proper Opposition Memorandum to Eisai's Motion is a relatively complicated task—in contrast to Eisai's task in opposing the relief requested in *this* Motion—all or most of which it already briefed in opposition to Plaintiff's Motions to Compel and/or in its own motions. Along these lines, for example, it is easy for Eisai to argue against, and for the Court to assess, whether more than ten (10) depositions should be allowed in this complex False Claims Act ("FCA") case--and to argue and/or assess other aspects of the relief sought. Although Relator has attempted to address Eisai's arguments under extreme time constraints of only a few business days, all rights are reserved.

**Eisai's Motion Must Be Denied Because It Was Not Timely Filed.**

Under Local Rules and applicable case law, Eisai was required to file its Motion for Protective Order as to alleged confidential business records when its Response to Plaintiff's Requests for Production of Documents ("RFPs'") was filed. Clearly, Eisai's Motion states that it needs protection from those RFPs. But those RFPS were served over five (5) months ago, and Eisai's Response and Motion for Protective Order was *due some three-and-half (3.5) months*

*ago*. Thus, Eisai has lost its right to move for this protection. Floeter v. City of Orlando, 2006 U.S. Dist. LEXIS 19577, *4 (M.D. Fla. 2006). Although it is true that undersigned counsel *subsequently* agreed to work with Eisai on such a protective order, Eisai did not follow through in good faith, and Relator was of course not obligated to agree to Eisai's impossible or extremely onerous terms. In high relief was Eisai's insistence that information concerning the pricing of the four drugs at issue be for "attorneys' eyes only." As defense counsel was advised by phone *months ago*, this condition is clearly unacceptable because the relator in a FCA case obviously has to be apprised of the evidence—not only as a party, but also because he will be acting as the U.S.A.'s advocate and voice on the witnesses stand. Relator's experts clearly also would need access to such documents. Because of this and other unreasonable conditions that Eisai insisted upon, negotiations over such a stipulated order broke down approximately *two (2) months ago*, and Eisai's eleventh-hour Motion is clearly untimely no matter which trigger date is used: that date or the earlier date.

Further, Eisai has used these unreasonable conditions as yet another delay tactic to thwart discovery. Eisai knew that it had to move for a protective order earlier, but chose instead to belatedly seek one—only to add unreasonable conditions to kill any possible agreement. That has been its overall *modus operandi* for the last half year: to engage in a charade of appearing to engage in discovery, or of taking steps to apparently "smooth the way" for discovery on its own terms--only to later purposely foreclose those opportunities by attaching clearly unreasonable conditions and prerequisites to the discovery or protective order.

**Judge Ungaro's Unequivocally Denied Eisai's Motion to Stay Discovery.**

The reason: at the beginning of August 2011, Judge Ungaro summarily denied Eisai's Motion to Stay this case while Eisai's motion to dismiss under Rules 9(b) and 12(b)(6) is pending. By signing this Order, Judge Ungaro clearly expressed her intention that discovery proceed, notwithstanding the motion to dismiss. Although Judge Ungaro denied Eisai's motion quickly and without a written opinion, the Court obviously rejected Eisai's arguments. Moreover, it is well known that claims which involve alleged harm to the public and/or continuing harm support the denial of a defendant's request to stay discovery. Christou v. Beatport, LLC, 2011 U.S. Dist. LEXIS 19055, *9 (D. Colo. 2011). Keeler's Complaint alleges ongoing harm to the U.S. Treasury, the taxpayer, and the health care system. Further, it is well

settled that the mere filing of a motion to dismiss does not suspend the parties' right to take discovery.

Hence, under the law and especially considering Judge Ungaro's Order, "not to mention" the pre-trial schedule for discovery in the Court's Scheduling Order, Eisai was obligated to allow discovery to proceed. But Eisai did not want the U.S.A., through Relator, to acquire more evidence of the three (3) nationwide fraud schemes at issue. *So Eisai unilaterally imposed its own stay, in violation of the Court's Order, Local Rules and the Federal Rules of Civil Procedure.* Of course, Eisai did not come right out and state that it refused for discovery to proceed; that would be too obvious. Instead, it engaged in at least a five-month charade of *pretending* to accommodate Relator's insistence on taking discovery. In the many dozens of emails between Relator's counsel and defense counsel [attached hereto and incorporated herein by reference as **Exhibit "A"**], Eisai agreed repeatedly to depositions and document production that should have taken place over the last five (5) months—only to engage in delay tactics and, when those no longer appeared viable credible, to attempt to condition the discovery on terms that it knew Relator could never accept: for example, the condition that Eisai and various witnesses not be re-deposed, under any circumstances or to *any* extent, even if their Rule 30(b)(6) or individual witness testimony was inadequate or evasive.

When Relator's counsel stated that the depositions should proceed, and that both sides could reserve their rights to continuation or termination of one or more depositions at the conclusion of the depositions (the prevailing practice around the country—otherwise no deposition would ever begin), Eisai rejected that—and is now feigning some "illicit purpose" on Relator's part to repeatedly and unreasonably depose Eisai and fact witnesses, or to hold open their depositions without good cause. Eisai even added the absurd condition that all document production be concluded before depositions begin. Of course, document production in a case of this size could take well over a year, especially with all the roadblocks Eisai is erecting. And the plaintiff has the right to take discovery in any order she likes—including the clear right to take a Rule 30b(b)(6) deposition and some witness depositions before all of the documents have been produced. That right is especially important in the case at bar, in which Eisai, through its astonishing delay tactics, has not even produced a single document to date.

**Eisai's Witness List Is a Snapshot of Its Continuous Course of "Hiding the Ball" in 2011.**

To gauge how outrageous Eisai's obstructive tactics have been, one need only compare its Witness List to Relator's—both of which were served at the end of last week: While Relator listed hundreds of witnesses (almost all of whom were identified in the Third Amended Complaint that Keeler filed several months ago), Eisai listed only Keeler and six witnesses. Yes, only six witnesses, when its organizational knowledge is vastly superior to Relator's. Eisai could have listed hundreds of people likely to have discoverable information regarding the off-label allegations alone. This Honorable Court should not countenance Eisai's stonewalling—shrewdly disguised or transparent. Again, Relator's counsel has been pressing Eisai for discovery for about half a year. The docket and the emails unequivocally show the requests, the delay tactics, Relator's press for depositions and nonobjected-to documents, and the frustration that ensued.

### Eisai's Refusal to Engage in an ESI Protocol Also Shows Its Bad Faith.

Eisai's claim that it will engage in an protocol about electronically ("ESI") stored information *at some time in the future*, "but not right now because it is premature," is another prime indicator of its bad-faith intransigence. When the parties filed their Joint Scheduling Report [DE 54] on May 6, 2011, over seven (7) months ago, Eisai was required to address ESI under Federal Rule 26(f). But Eisai did not meaningfully participate, remaining virtually silent about ESI except to *agree* that "[t]he parties will work together to reach agreements on electronic discovery issues." Id. at 8, para.13. Instead, Relator was left to provide a one-page outline of an ESI protocol and computer systems information that was needed from Eisai (Id. at 9-10, para.14). Eisai simply ignored the subject, failing to disclose anything until its recent Motion for Protective Order, which includes a Declaration from an in-house information technology ("IT") professional which has more holes in it than Swiss Cheese.

Indeed, "fast forward" to the present and Eisai's position is, amazingly, no different than it was when this FCA suit was first unsealed: that now is not the time. Brazen—there is no other word for it. Eisai's persistent refusal to agree to an ESI protocol, to fail to even acknowledge that one is needed by this point (as made clear by its Opposition Memorandum to Relator's Motion to Compel ESI Protocol)—so many months after the *qui tam* suit was unsealed over nine (9) months ago and the Court denied its motion to stay discovery some five (5) months ago—is tantamount to a refusal to move discovery forward. See SEC v. Collins & Aikman Corp., 256 F.R.D. 403, 414 (S.D.N.Y. 2009) ("The SEC's blanket refusal to negotiate a workable search protocol responsive to these requests is patently unreasonable.").

**Summary of Eisai's Stonewalling**

But to fully appreciate the cunning extent of Eisai's delay tactics, especially concerning depositions sought, one should peruse the dozens of relevant emails between Relator's counsel and defense counsel [attached hereto as **Exhibit "A"**], especially against the background of Court filings. The following is a brief summary, with reference to email dates and Court filings:

• On May 6, 2011, the parties file their Joint Scheduling Report [DE 54], but only Relator addresses ESI (as described above).

• On July 8, 2011, Relator serves Requests for Production. Emails at 1.

• On July 28, 2011, Eisai moves to stay discovery [DE 79].

• On August 1, 2011, Judge Ungaro denies the motion, even before Relator files an Opposition or the Government files a Statement of Interest arguing against a stay [DE 82].

• On August 5, 2011, Eisai acknowledges the Order Denying Stay of Discovery.

• On August 13, 2011, Relator notices the Rule 30(b)(6) deposition of Eisai [DE 87 through 91] for a five-day span, from August 29 through September 2, 2001, and lists the areas of inquiries as the three major fraud schemes detailed in particular paragraphs of the Complaint (as well as documents in Eisai's custody or control pertaining thereto). In compliance with Local Rules, Relator advises that alternative dates may be used. Firm dates are requested.

• On August 10, 2011, Eisai responds to Relator's Requests for Production. Emails at 3. But not one document is produced. No privilege log is provided either.

• On August 15, 2011, Relator notes that Eisai has agreed to produce some documents, despite its objections to producing most. Relator asks how many pages of non-objectionable documents there are. Emails at 4.

• On August 19, 2011, Relator asks for alternative dates for the Rule 30(b)(6) deposition, because he has not heard back on firm dates (or "loose" dates, for that matter). Emails at 4.

• On August 19, 2011, Relator asks again for an answer about how many non-objectionable documents there are. Id. at 5.

• On August 19, 2011, Eisai states "[w]e are currently checking on available dates for a 30(b)(6) deposition and should be able to provide proposed dates to you by [the end of this week]." Eisai agrees to produce non-objectionable documents by email or zip drive—not hard copies. Id. at 6, 7. (It has never done so.)

• On August 22, 2011, Relator lists forty-two (42) witnesses he would like to depose, and asks for dates in September and October 2011. Id. at 8.

• On August 22, 2011, Eisai objects to forty-two (42) depositions, on top of the already noticed Rule 30(b)(6) deposition, and Relator responds by listing only eight (8) individual witnesses he would like to depose this year. Id. at 9.

• On August 26, 2011, Eisai states that "[w]e have not been able to nail down potential dates for our 30(b)(6) designee(s), but we anticipate that we will have that for you by next Tuesday." Id.

• On August 25, 2011, Eisai sends Relator a proposed protective order that omits HIPAA provisions, even though the template it has used had HIPAA provisions and even though this is a health care case in which patient privacy issues could arise in document production. Id. at 10. Relator soon draws Eisai's attention to this concern—despite Eisai's absurd claim that Relator stated he was too busy to talk about proposed protective order. (Counsel for Relator only said that he had been very busy in the last week or so and had not studied it completely, and yet pointed out some issues with it.)

• On August 30, 2011, Eisai states that September 26, 2011 and October 11-12, 2011 are clear for the 30(b)(6) deposition, but that it is still looking into potential dates for the seven (7) individual witnesses. Id. at 10.

• On September 2, 2011, Relator asks for earlier dates, if possible, for all of these eight (8) total depositions. Eisai makes clear that the 30(b)(6) designees will only be made available for three (3) days. Id. at 11.

• On September 5, 2011, Relator again asks for feedback on earlier deposition dates. Eisai responds that no earlier date is possible for the 30(b)(6) deposition, and states it is still looking into dates for the witness depositions. Id. at 12.

• On September 12, 2011, Relator sends Eisai a 62-page good faith letter about Eisai's unreasonable objections to the RFPs. Id. at 13.

• On September 15, 2011, Relator states, "I would also like to point out that there are a number of RFPs for which I simply cannot understand how Eisai could even raise an objection." Id. at 13.

• On September 19, 2011, after Eisai's urging, the parties change the Rule 30(b)(6) deposition to late October 2011. Id. at 18.

7

• On or about September 21, 2011, the parties discuss in more detail Eisai's proposed stipulated protective order, and Relator states that lack of HIPAA provisions is a fatal defect if patient health records are involved, and that Eisai's lacks it even though one of the templates it used had HIPAA provisions.  See Id. at 19 (referencing only the call date).

• On September 30, 2011, the parties agree to request a trial continuance and new pretrial deadlines. Id. at 22.

• On September 30, 2011, Eisai sends Relator a new proposed Stipulated Protective Order about alleged sensitive or confidential documents, but it adds a new provision:  language for "attorneys' eyes only for drug pricing documents. Id. at 22.

• As of October 3, 2011, Eisai still has not provided a privilege log—not even a summary one.

• On October 3, 2011, Relator files Motion to Compel, and argues that Eisai has waived its right to assert attorney-client privilege. Relator points out many of the deficiencies and waivers by Eisai through that date.

• On October 7, 2011, Relator again asks for late October 2011 deposition dates. Id. at 22.

• On October 10, 2011, Relator states that he hopes the parties can agree on a Stipulated Protective Order so that Eisai stops withholding non-objectionable documents. To get Eisai moving, Relator assures Eisai: "[W]ith respect to the documents withheld by Eisai, even if there is no protective order entered, if one or more [documents] needed to be filed by us, they would be filed under seal, allowing you to assert your position that they are sensitive. Thus, with this assurance, there's no reason for you to withhold documents." Relator also asks, "..please let us know the firm 30b6 depo dates you promised: specifically, which is it going to be: week of Oct. 17 or week of Oct. 24?  Thx." Id. at 23.

• In or about early to mid-October, Eisai indicates by phone that the Stipulated Protective Order must provide that drug pricing documents are strictly for "attorneys' eyes only." Relator says that this condition is clearly unacceptable because the relator in a FCA case obviously has to be apprised of the evidence—not only as a party, but also because he will be acting as the U.S.A.'s advocate and voice on the witnesses stand (particularly for alleged "best price" violations with respect to Aloxi, etc.). Keeler's experts clearly also would need full access to such documents. Eisai does not state it is negotiable, and the parties are at an impasse. (However,

Eisai does not move for a protective order in that for two months, and does not provide adequate support for getting one.[1])

• On October 19, 2011, Eisai asks for the 30(b)(6) deposition of Eisai to be bumped briefly, after the week of October 24, 2011 had been selected, because defense counsel asserted that his son had a brief medical emergency the week before, and that hence it would be difficult for him to prepare the corporate representatives/designees for the following week's deposition. Relator agrees, *provided* that the deposition takes place prior to Thanksgiving (i.e., in the next four weeks). Eisai then denies the agreement to conduct it before Thanksgiving (which has just been made by phone). Eisai cites additional reasons for bumping it, including the new trial dates and discovery deadline, but offers to "check with the client on November timing" and on its designees' schedules. Relator writes in large type: "I disagree that you did not agree to November 2011, pre-Thanksgiving for the 30b6 deposition." Id. at 24-25.

• On October 27, 2011, Relator writes: "**Please provide us by this Monday with firm dates in November, or in the first week of December, for the 30b6 deposition of Eisai, as well as for the individual witnesses.**" Id. at 25 (emphasis in original).

• On November 6, 2011, Eisai states it will look into December 2011 and January 2012 witness and 30(b)(6) deposition dates, but imposes a *new* condition: that neither Eisai's nor any witness's deposition may be held open for any reason (even a valid reason). Id. at 26. In near-contemporaneous calls, Relator explains that that cannot be agreed upon in any case, particularly since no one knows in advance whether a Rule 30(b)(6) designee will fulfill his obligation to provide complete testimony on the subject matters noticed. Relator writes Eisai:

> Kevin, I first made that request for firm depo dates months…[ago], and have been pursuing the matter ever since. Most times we discuss the matter, there seems to be a new twist or condition to Eisai's participation—this time including in your email today: "provided that you agree you will take the depositions of those witnesses only once, and will not seek to reopen their depositions on the grounds that you had not yet received all of Eisai's document production." We don't agree to that condition. We propose that the depositions be conducted promptly, and that both sides reserve their rights for and/or against reopening the depositions, as is the norm in complex litigation. As for the length of time of the 30b6 deposition, we agree to 3 days, with the parties' reserving their rights at the conclusion to argue for and/or against more time. Please advise…" Id. at 26.

• On November 6, 2011, Relator reminds Eisai of its agreement 8 months earlier, in the

---

[1] It is submitted that this, like so many other actions by Eisai, was a delay tactic. Even the defective Motion for Protective Order may be one, if Eisai thinks it can just re-ask for one later.

Joint Scheduling Report, to "work together to reach agreements on electronic discovery issues.'" Id. at 26. But it is to no avail: Eisai does not change its position that an ESI protocol is premature.

- On November 11, 20011, Relator yet again demands firm deposition dates, with the depositions to occur in late November and/or December 2011. But Eisai states that the difference in positions on whether they can be held opened or not, and whether all document production must occur prior to the depositions (another, related condition that Eisai should have raised, if at all, many month ago), must be decided by the Court, id. at 29—thus delaying depositions to the point that no date is being offered by Eisai at all—after some four months of promises, excuses, and newly added conditions utilized by Eisai to thwart discovery.

**It Was All a Charade.**

As it developed and especially in retrospect, it was all a charade: In late November 2011, Eisai officially takes the position that it had denied for four months: that the Court should not allow discovery to proceed until the Court has ruled on the Motion to Dismiss. Id. at 29-34. *Of course, Judge Ungaro ruled against that very argument many months ago.* Keeler makes one last attempt to schedule the depositions in the near future, but Eisai not only does not budge from its unreasonable positions, but files a last-minute motion for protective order—even as Relator offered to work out dates with Eisai.

*As of today, Eisai still has not provided a privilege log of any nature whatsoever. There are over 160 docket entries, yet Eisai has not produced a single document or even agreed to a deposition date or ESI protocol. Eisai still has not even stated how many non-objectionable documents there are. Eisai officially claims, just four business days ago, that there are only seven people who could be witnesses concerning the nationwide kickback, "best price" and off-label marketing schemes. Only about 14 days ago does Eisai actually reveal that almost all of the half-dozen witnesses that Relator has been seeking to depose, are no longer employed by Eisai, and of course makes no assurance that they can be produced.*

Because of these great delays, and because past is sure to be prologue with Eisai, Relator, for himself and the U.S.A., seeks an Order that discovery hearings be held every 45 days; there is simply no reason to believe that Eisai will cooperate in discovery without being regularly policed. Relator also seeks an Order that Eisai submit to the Rule 30(b)(6) deposition, and the

individual witnesses, as well as witness Brad Pierson (a present employee), by January 30, 2012. Relator also seeks the other relief set forth on pages 1 and 2 above.

### Thirty Depositions Should Be Allowed.

As Relator himself has identified hundreds of witnesses—and they include dozens of people who could testify about off-label marketing of Ontak alone—more than ten depositions should be allowed in this complex case. Leave of Court is requested under Federal Rule 30(a)(2). "[T]he Court must grant leave to the extent consistent with Rule 26(b)(2)." Fed.R.Civ.P. 30(a)(2) (emphasis added). Rule 26(b)(2) vests the Court with discretion to alter the general limit on the number of depositions and on the length of depositions under Rule 30. Hence, the rule also permits the Rule 30(b)(6) deposition to take place over three or more days. Even a moment's glance at the Third Amended Complaint would convince most any layperson that multiple days are needed for it. In Exhibit "A" alone (the emails), Relator listed the names of well over thirty witnesses with extensive knowledge about the schemes alleged. All of the depositions sought are patently relevant to the case. Relator reserves the right to seek additional depositions.

### Eisai's Has Failed to Meet Its Heavy Burden of Proof for a Protective Order.

This Honorable Court should deny Eisai's latest Motion for Protective Order because Eisai clearly has not met its heavy burden of identifying and substantiating the particulars of tangible, undue harm that it would suffer by revelation of specific confidential documents, compared to the U.S.A.'s right to discovery. It has not even been properly alleged, as it was Eisai's *counsel* that simply made a few conclusory statements in the Motion that sensitive business records are involved. See Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 (1981); Fed. R. Civ. P. 26(c); New World Network Ltd. v. M/V Norwegian Sea, 2007 U.S. Dist. LEXIS 25731, *2-3 (S.D. Fla. Apr. 6, 2007) (particular demonstration of necessary facts must be shown); Commodity Futures Trading Comm'n v. Midland Rare Coin Exchange, Inc., 1999 U.S. Dist. LEXIS 16939, *9 (S.D. Fla. Aug. 4, 1999) (same); Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251 (D. Md. 2008) (party has duty to particularize claims of burden or privilege); Atlanta Journal & Constitution v. City of Atlanta, 1998 U.S. Dist. LEXIS 12049, *30 (N.D. Ga. June 3, 1998) (rejecting "blanket confidentiality agreement" for Rule 30(b)(6) deposition for failure to detail good cause); American Standard Inc. v. Humphrey, 2007 U.S. Dist. LEXIS 4564 62, *7 (M.D. Fla. June 22, 2007) ("The Court understands Defendant's concern in turning over private financial materials, however, Defendant has not shown that the production of this

relevant information would be harmful."); Gober v City of Leesburg, 197 F.R.D. 519, 521 (M.D. Fla. 2000) (holding that party resisting discovery has burden to show that the information sought is both confidential and that disclosure would be harmful).

"A party seeking to invoke the protections of Rule 26(b)(2)(B)…bears the burden of persuasion. As with a motion for protective order under Rule 26(c), this burden cannot be sustained with bald generalizations. Rather, 'the responding party should present details sufficient to allow the requesting party to evaluate the costs and benefits of searching and producing identified sources." Cartel Asset Mgmt. v. Ocwen Fin. Corp., 2010 U.S. Dist. LEXIS 17857, *45 (D. Col. Feb. 8, 2010). The court cannot speculate as to undue burden to produce documents. General Electric Capital Corp. v. Lewar Corp., 215 F.R.D. 637,641-42 (D. Kan. 2003).

Conclusory statements that serious harm would result from exposure of trade secrets do not suffice, and Eisai *counsel's* three or four conclusory sentences to that effect are insufficient. See BASF v U.S., 321 Supp.2d 1373. Eisai's Motion is not supported by any sworn statement or other cogent, detailed substantiation from someone with personal knowledge. Because of Eisai's woefully incomplete argument, the only alternative is to deny its Motion. Of course, if it is incomplete, it is conclusory by definition.

Moreover, "it is well settled that confidentiality does not act as a bar to discovery and is generally not grounds to withhold documents from discovery." Barrington v. Mortgage It, Inc., 2007 U.S. Dist. LEXIS 90555, *4 (S.D. Fla. Dec. 10, 2007) (quoting Dean v Anderson, 2002 U.S. Dist. LEXIS 11536, *2 (D. Kan. June 6, 2002)). "[T]here is *no* absolute privilege that immunizes trade secrets and similar confidential documents." Empire of Carolina, Inc. v. Mackle, 108 F.R.D. 323 (S.D. Fla. 1985) (emphasis added).

Indeed, Supreme Court precedents show that Eisai is not entitled to the protection it seeks. It is well established in this nation's highest court that there is no absolute privilege for trade secrets and similar confidential information. Federal Open Market Cmte. v. Merrill, 443 U.S. 340, 363 (1979). Besides showing that the information qualifies for protection, the movant must also show good cause, with specific, for restricting dissemination on the grounds that it would be harmed by its disclosure. Centurion Indus., Inc. v. Warren Steurer & Assocs., 665 F.2d 323, 325 (10th Cir, 1981); Struthers Scientific & Int'l Corp. v. General Foods, 45 F.R.D. 375, 378 (D.C. Tex. 1968).

**The Documents Should Be Produced in Native Format.**

*As implicitly or expressly set forth in Relator's RFPs (asking for "originals", etc.), and as stated in Relator's recent Reply Brief, Eisai should produce all documents in searchable, native format to the fullest extent possible.* Rule 34(b)(2) requires the responding party to produce ESI is either a form in which it is ordinarily maintained or in a reasonably usable form, if the request did not specify a particular form. In Mr. Ebel's Declaration for Eisai about its ESI, he states that the documents requested are in a searchable mode. The Advisory Committee Notes to Federal Rule 34 make clear that the responding party may not manipulate ESI or change its format to thwart ESI's natural searchability or usability. Further, the courts have consistently compelled the production of ESI in native or original formats. See, e.g., Hagenbuch v Sistemi Elettronici Indusriali S.R.L., 2006 WL 665005 (N.D. Ill. Mar. 8, 2006) (holding that production of ESI as TIFF images was insufficient and ordering production of ESI in its original or native format); Williams v. Sprint, 230 F.R.D. 640 (D. Kan. 2005).

**Because the Rule 30(b)(6) Deposition Notice *Tracks* the Complaint's Allegations of Three Nationwide Schemes to Bilk the U.S. Treasury, the Notice Simply Cannot Be Regarded as Overly Broad.**

Contrary to Eisai's gross distortion of the Rule 30(b)(6) Notice of Deposition of Eisai, the Notice *tracks* the Third Amended Complaint, which sets forth three nationwide schemes successfully implemented by Eisai to bilk the U.S. Treasury. Thus, the Notice cannot be considered overbroad. Query how it can be when it incorporates the allegations of the Complaint and asks Eisai to identify documents in its custody or control that pertain to the factual allegations? Amazingly, Eisai contends that the Notice lacks particularity despite the obvious fact that it incorporates by direct reference nearly one hundred pages of factual allegations in the Complaint.

                                        Respectfully submitted:

                                        s/ Steven F. Grover
                                        -----------------------------------------
                                        Steven F. Grover, Esq.
                                        Steven F. Grover, PA
                                        One East Broward Blvd., Suite 700
                                        Fort Lauderdale, FL 33301
                                        Tel.: 954-356-0005 / Fax : 954-356-0010
                                        E-mail: stevenfgrover@gmail.com

<u>Certificate of Service</u>

   I hereby certify that the above has been served upon all counsel of record by CM/ECF on this **December 14, 2011**.

                    s/ Steven F. Grover
                    -----------------------------------------
                    Steven F. Grover

Keeler.OmnibusMtn&OppMemo.121141